1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10
11   RAJ CHRISTOPHER GUPTA,        ) Case No. CV 14-1709-CJC (KK)
                                   )
12                   Petitioner,   )
                                   )
13         v.                      ) FINAL REPORT AND
                                   ) RECOMMENDATION OF UNITED
14   JEFFREY BEARD, Secretary of   ) STATES MAGISTRATE JUDGE
     CA Dept of Corrections and    )
15   Rehabilitation,               )
                                   )
16                   Respondent.   )
                                   )
17   _____ )
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          a.   *The People's Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          b.   *The Defense's Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     A.   Claim One, subclaim(c) of Claim Ten, and Claims Thirteen,
         Fourteen, and Nineteen Do not Warrant Habeas Relief . . . . . . . . . 20

         1.   State Instructional Error Claims on Federal Habeas
            Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

         2.   Claim One Does Not Warrant Habeas Relief . . . . . . . . . . . . . 21

            a.   Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . 22
            b.   The State Court Decision . . . . . . . . . . . . . . . . . . . . . . . 22
            c.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

         3.   Subclaim (c) of Claim Ten Does Not Warrant Habeas
            Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            a.   Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . 26
            b.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

         4.   Claim Thirteen Does Not Warrant Habeas Relief . . . . . . . . . 27

            a.   Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . 27
            b.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

         5.   Claim Fourteen Does Not Warrant Habeas Relief . . . . . . . . . 32

            a.   Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . 32
            b.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

         6.   Claim Nineteen Does Not Warrant Habeas Relief . . . . . . . . . 36

            a.   Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . 36
            b.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

i

1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3    B.    Claim Five Does not Warrant Habeas Relief  . . . . . . . . . . . . . . . . . . 39
4          1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 39
5          2.    The State Court Decision  . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
6          3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
7    C.    Claim Six Does not Warrant Habeas Relief  . . . . . . . . . . . . . . . . . . 45
8          1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 45
9          2.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
10   D.    Claim Seven Does not Warrant Habeas Relief . . . . . . . . . . . . . . . . . 52
11   E.    Claim Eight Does not Warrant Habeas Relief  . . . . . . . . . . . . . . . . . 54
12         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 55
13         2.    Preservation of Evidence Claims  . . . . . . . . . . . . . . . . . . . . . . 56
14         3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
15   F.    Claim Nine Does not Warrant Habeas Relief . . . . . . . . . . . . . . . . . . 58
16         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 58
17         2.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
18   G.    Subclaims (a) and (b) of Claim Ten, and subclaim (b) of Claim
19         Seven, Do not Warrant Habeas Relief  . . . . . . . . . . . . . . . . . . . . . . 61
20         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 62
21         2.    Exclusion of Evidence Claims  . . . . . . . . . . . . . . . . . . . . . . . . 63
22         3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
23   H.    Claim Eleven Does not Warrant Habeas Relief  . . . . . . . . . . . . . . . . 66
24         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 66
25         2.    Judicial Bias Claims on Federal Habeas Review  . . . . . . . . . . 67
26         3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
27               a.    Alleged Biased Comments Subclaims  . . . . . . . . . . . . . 68
                 b.    Recusal Subclaims  . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

28

ii

1

**TABLE OF CONTENTS**

                                                                                      **Page**

2

3   I.    Claim Twelve Does not Warrant Habeas Relief . . . . . . . . . . . . . . . 72

4         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 73

5         2.    Confrontation Clause Claims on Federal Habeas Review . . . 74

6         3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

7   J.    Claim Fifteen Does not Warrant Habeas Relief . . . . . . . . . . . . . . . 76

8         1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 77

9         2.    Exclusion of Evidence Claims . . . . . . . . . . . . . . . . . . . . . . . . 77

10        3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

11  K.    Claim Sixteen Does not Warrant Habeas Relief . . . . . . . . . . . . . . . 78

12        1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 78

13        2.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

14  L.    Claim Seventeen Does not Warrant Habeas Relief  . . . . . . . . . . . . 81

15        1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 82

16        2.    Prosecutorial Misconduct Claims on Federal Habeas
                Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

17

18        3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

19  M.    Claim Eighteen Does not Warrant Habeas Relief . . . . . . . . . . . . . . 88

20        1.    Sufficiency of the Evidence Challenges  . . . . . . . . . . . . . . . . 88

21        2.    Applicable California Law . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

22        3.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

23  N.    Claim Twenty Does not Warrant Habeas Relief . . . . . . . . . . . . . . . 93

24        1.    Relevant Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . 93

25        2.    Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

26  O.    Claims Two, Three, and Four Do not Warrant Habeas Relief . . . . 94

27        1.    Ineffective Assistance of Appellate Counsel Claims . . . . . . . 95

28        2.    The State Court Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

iii

1

## TABLE OF CONTENTS

Page

2

3          3.      Analysis  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

4     P.    Claim Twenty-One Does not Warrant Habeas Relief . . . . . . . . . . . 98

5     Q.    Claim Twenty-Two Does not Warrant Habeas Relief  . . . . . . . . . . 99

6 VII.   RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJ CHRISTOPHER GUPTA, | ) Case No. CV 14-1709-CJC (KK) |
| Petitioner, | ) |
| | ) |
| v. | ) FINAL REPORT AND |
| | ) RECOMMENDATION OF UNITED |
| JEFFREY BEARD, Secretary of | ) STATES MAGISTRATE JUDGE |
| CA Dept of Corrections and | ) |
| Rehabilitation, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

This Final Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## SUMMARY OF RECOMMENDATION

Raj Christopher Gupta ("Petitioner"), a California state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254(d), challenging his convictions for transportation of a controlled

1

substance and possession for sale of a controlled substance, in Los Angeles County Superior Court.  On habeas review, Petitioner sets forth 22 claims of alleged constitutional error.  However, Petitioner's claims fail on their merits.  Accordingly, the Court recommends the Petition be denied.

## II.

## PROCEDURAL HISTORY

On February 22, 2010, following a jury trial of Petitioner in California Superior Court for the County of Los Angeles, Petitioner was convicted of: (1) transportation of a controlled substance, in violation of California Health and Safety Code section 11379(a); and (2) possession for sale of a controlled substance, in violation of California Health and Safety Code section 11378.  Lodgment ("lodg.") No. 1 (Clerk's Transcript on Appeal ("CT")) at 234-35.[1]  In a separate in rem proceeding, the jury also found that property, in the amount of $4,010, was subject to civil forfeiture under California Health and Safety Code section 11470.  CT at 244, 252-54.  The convictions and forfeiture arose from a traffic stop and search of Petitioner and his truck, where officers found money and individually wrapped bags of methamphetamine.[2]  Id. at 134-37 (Amended Information).

Petitioner admitted he had served five prior prison terms, and that he had two prior convictions under California Health and Safety Code sections 11379 and

---

[1]    The Court's citations to Lodgments refer to the lodged documents filed by Respondent in support of its Answer.  (ECF Docket No. 25).  In addition to the CT, Respondent has filed three separate Augmented Clerk's Transcripts on Appeal ("ACT").  See Lodg. Nos. 4, 6-7.  The ACTs will be referred to by their respective Lodgment numbers for clarity.

[2]    This was Petitioner's second trial for the same charges.  The first trial resulted in a mistrial due to juror misconduct for talking about the case in the courthouse hall.  CT 142-43.

2

11351.  CT 136, 237-38.  Based on the prosecutor's statement that he would not pursue both of the prior strike convictions initially alleged against Petitioner under California's "Three Strikes" law (codified in California Penal Code sections 1170.12(a)-(d) and 667(b)-(i)), Petitioner admitted his 1985 burglary strike conviction, but not his 1993 involuntary manslaughter strike conviction.  CT 136, 237-38; Lodg. No. 2 (Reporter's Transcript on Appeal ("RT")) at 1632-40.  Hence, on August 20, 2010, the trial court sentenced Petitioner to prison for 12 years.  CT at 444-45; RT at 2741-44.  The court also ordered the funds previously found forfeited to be submitted.  CT 449.

On May 31, 2012, on direct appeal, the California Court of Appeal affirmed Petitioner's convictions in a reasoned decision.  Lodg. No. 13.  On August 8, 2012, the California Supreme Court summarily denied review of the appeal.  Lodg. No. 15.

On August 26, 2011, while his appeal was pending, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  Lodg. No. 11.  On October 5, 2011, the Court of Appeal denied the petition as premature.  Lodg. No. 12.

On August 1, 2012, while his petition for review was pending before the California Supreme Court, Petitioner filed another petition for writ of habeas corpus in the California Court of Appeal.  Lodg. No. 16.  On August 9, 2012, the Court of Appeal denied the petition without prejudice to filing a petition for writ of habeas corpus in the Los Angeles County Superior Court.  Lodg. No. 17.

On September 4, 2012, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court.  Lodg. No. 18.  On October 3, 2012, the Los Angeles County Superior Court denied the petition in a reasoned order.  Lodg. No. 19.

On October 29, 2012, Petitioner filed a third petition for writ of habeas

3

corpus in the California Court of Appeal. Lodg. No. 20. On November 28, 2012, the Court of Appeal denied the petition without prejudice to filing a new petition in that court with a copy of the October 3, 2012 Los Angeles County Superior Court order denying habeas relief, a declaration from appellate counsel, and a copy of the surveillance video Petitioner mentioned in his petition. Lodg. No. 21.

On January 30, 2013, Petitioner filed another petition for writ of habeas corpus in the Los Angeles County Superior Court. On February 26, 2013, the Los Angeles County Superior Court denied the petition in a reasoned order on the merits, and because some of the claims were raised and rejected by the California Court of Appeal on direct appeal and by the Superior Court on habeas corpus in previous orders.[3] Lodg. No. 23.

On June 10, 2013, Petitioner filed a fourth petition for writ of habeas corpus in the California Court of Appeal. Lodg. No. 24. On July 11, 2013, the Court of Appeal summarily denied the petition. Lodg. No. 25.

On August 2, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Lodg. No. 26. On February 11, 2014, the California Supreme Court summarily denied the petition. Lodg. No. 27.

On March 7, 2014, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") with this Court, raising 22 grounds along with a multitude of subclaims, in support of his claim to federal habeas relief. (ECF Docket No. ("dkt.") 1). Petitioner also filed an accompanying Memorandum of Points Authorities ("Petitioner's Mem.") (dkt. 2) and a "Table of Contents of Grounds

---

[3]     The February 26, 2013 order mentions two prior orders denying habeas relief in the Superior Court. Lodg. No. 23 at 2. The first order, denied by Judge Daniel Feldstern on January 17, 2012, has not been provided to the Court by either party. The second order appears to be the October 3, 2012 order described above, although the Superior Court erroneously referred to its filing date as "October 13, 2012." Compare id. with Lodg. No. 19.

4

1    Raised" (dkt. 3).

2         Petitioner also filed two motions with his Petition.  The first motion
3    requested the Court to take judicial notice of the state record in Petitioner's
4    criminal case pursuant to various provisions of the California Evidence Code.
5    (Dkt. 4).  The second motion sought discovery and an evidentiary hearing.  (Dkt.
6    5).  On March 12, 2014, the previously assigned Magistrate Judge denied the
7    request for judicial notice because the California Evidence Code is inapplicable to
8    this federal habeas action, and because the Court considers the state record as it
9    does in every Section 2254 habeas action.  (Dkt. 7).  The previously assigned
10   Magistrate Judge denied the second motion because the discovery and/or
11   evidentiary hearing sought by Petitioner was related to claims denied on the merits
12   by the state courts, and thus review was limited to the record before those state
13   courts under Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398, 179 L. Ed.
14   2d 557 (2011).  (Dkt. 7).

15        On September 30, 2014, Respondent filed an Answer to the Petition, with an
16   accompanying Memorandum of Points and Authorities ("Respondent's Mem.").
17   (Dkt. 24).  Petitioner's Traverse was due on October 30, 2014, but Petitioner did
18   not constructively file a request for an extension of time until November 25, 2012
19   – nearly one month late.  (Dkt. 27).  Nonetheless, the Court granted Petitioner an
20   extension of time to file a Traverse.  (Dkt. 28).  On December 18, 2014, Petitioner
21   filed his Traverse to Respondent's Answer.  (Dkt. 29).  The matter thus stands
22   submitted and ready for decision.

23                                    **III.**

24                           **RELEVANT FACTS**

25        For a summary of the facts, this Court relies on the California Court of

26

27

28

5

Appeal's opinion:[4]

a.    *The People's Evidence*

About 8:30 p.m. on January 15, 2009, Los Angeles County Sheriff Deputies Derek Scharlin and Christopher Craft were in a parked patrol car monitoring an intersection in Santa Clarita due to complaints that drivers had been failing to obey the stop signs. They observed a gray Mazda pickup truck travel through the intersection without stopping at the posted sign and then initiated a traffic stop.

Deputy Craft approached the vehicle on the driver's side and smelled a strong odor of marijuana emitting from the truck. He asked the driver, identified as Gupta, for his driver's license and registration, which Gupta provided to the deputy. Gupta acted extremely nervous, as his hands were shaking and he was stuttering as he spoke to the deputy. Deputy Craft asked Gupta to exit the vehicle, which he did. The deputy searched Gupta's person and found two tightly wound bindles of cash in the front right pocket of Gupta's pants. Each bindle contained $1,320 in mixed denominations.

---

[4]    Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted). In his Objections to the original Report and Recommendation, Petitioner alleges the summary is inaccurate. Objections at 2. The Court has independently reviewed the trial record and finds the summary accurate.

6

Deputy Craft did not believe that Gupta was under the influence of a controlled substance, nor did he find on Gupta's person items commonly possessed by users of a controlled substance, such as a glass smoking pipe, needle, syringe or razor blade.

Deputy Scharlin searched the truck after Gupta had exited it. In the rear portion of the cab of the truck, within arm's reach of the driver, Deputy Scharlin recovered a nylon bag containing four large Ziploc bags in which there were 23 individually wrapped, small bags. Each small bag contained a white substance, resembling methamphetamine. Six empty, large Ziploc bags were in the nylon bag as well. In the front part of the truck on the passenger side, Deputy Scharlin found a tightly wound bindle of cash, containing $1,370 in mixed denominations, "underneath quite a bit of papers and napkins and various debris that were strewn on the seat." During the search, Deputy Scharlin noticed "the distinct smell of freshly burnt marijuana." No marijuana was in the vehicle, nor did Deputy Scharlin find any paraphernalia commonly used by people who ingest or smoke narcotics. Deputies Craft and Scharlin were the only deputies present at the stop at the time the narcotics were found in Gupta's vehicle.

Testing determined that the white substance in the small bags found in Gupta's truck was methamphetamine. The total amount of

methamphetamine recovered was approximately nine ounces.

Detective John Skikas testified as a narcotics expert, opining that the methamphetamine found in Gupta's vehicle was possessed for sale. Detective Skikas based his opinion on the large quantity of the drug found in the vehicle, the packaging of the methamphetamine in small bags then placed in larger bags, the amount of cash recovered and the lack of any paraphernalia in the vehicle indicating that Gupta was using the drug or signs that Gupta was under the influence. According to Detective Skikas, the wholesale value of an ounce of methamphetamine for purchase by a seller is $1,200 to $1,400 per ounce, a price consistent with the three bindles of cash found during the search, two containing $1,320 and one containing $1,370. The small bags were typical of those used to sell narcotics in amounts ranging from a quarter of a gram to an eighth of an ounce. In addition, the quantity of methamphetamine found in the vehicle would yield approximately 12,500 individual doses of the drug, which far exceeds the amount that a user would possess, and has a street value of approximately $25,000.

b.     *The Defense's Evidence*

Richard Kovacs testified that he had met Gupta at a job site in November or December 2008 and lived in Santa Clarita, not far from the intersection where the

deputies had stopped Gupta.  In December 2008 or
January 2009, Kovacs met with Gupta to show him work
that Kovacs had done at his in-laws' house.  The next
time Kovacs saw Gupta was in jail about a week before
Gupta's trial, where Kovacs was awaiting transfer after
pleading no contest to forgery, possession of a stolen
handgun and possession of methamphetamine and being
sentenced to two years in state prison.  Gupta told
Kovacs about the incident with the deputies, and Kovacs
reported that he had a similar story.  According to
Kovacs, the charges against him stemmed from an
incident during which Deputy Craft had stopped him
while driving because he did not have a front license
plate.  During the stop, Kovacs showed Deputy Craft that
the license plate was inside of his truck.  Deputy Craft
asked Kovacs to exit the truck and for permission to
search the vehicle, but Kovacs refused.  Deputy Craft
opened the truck's door, pulled Kovacs out and searched
the vehicle.  The deputy found four counterfeit bills and a
stolen handgun.  Deputy Craft then went to Kovacs's
house, entered the home office and had the safe opened.
Inside the safe was a "little bit" of marijuana, but Deputy
Craft said the marijuana had come from Kovacs's vehicle
and that he had smelled marijuana emitting from the cab
of the truck.  Kovacs maintained that, after the search, a
cellular telephone and $1,500 cash were missing from the

9

1    safe.  He denied smoking marijuana, but admitted to

2    having some in his house.

3            Gupta's father testified that Gupta lived with him

4    on January 15, 2009, and that he had rented rooms in his

5    house and his daughter's house to Brazilians, who spoke

6    both English and Portuguese.  Gupta's father saw

7    Brazilians drive Gupta's truck.

8            Gupta testified, stating that the money found by

9    the deputies had been earned by him working as a day

10   laborer.  Although he had some paycheck stubs, he did

11   not have any for the period from August 2008 to January

12   2009.  According to Gupta, he had the cash bindles with

13   him on January 15, 2009 because he had gone to an

14   auction that day hoping to buy a new car, and the money

15   was separated into three bindles because he wanted to

16   buy three cars.  When the deputies stopped him, he was

17   coming from a meeting he had with Kovacs to discuss the

18   possibility of Kovacs's helping him with work at his

19   father's homes.  Gupta was unaware that narcotics were

20   in his vehicle.  He loaned his truck to others, including

21   the Brazilians.  The nylon bag containing the drugs had

22   Portuguese writing on the outside of it, and Gupta did not

23   know that it was in his vehicle.  Gupta said that he had

24   found items that were not his in his truck on prior

25   occasions and then thrown them away, and if he found

26   methamphetamine worth $25,000 in his truck he would

27   have thrown it away.  Gupta said a deputy in plain

28

10

1    clothes, in addition to Deputies Craft and Scharlin, who
2    were in uniform, was present at the scene of his stop and
3    that deputy had asked him whether he would consent to a
4    search of the vehicle.  Gupta explained that he had told
5    the deputy in plain clothes that he would not consent to a
6    search, yet Deputy Craft had searched his person and
7    Deputy Scharlin, along with the deputy in plain clothes,
8    had searched his truck.  After the deputy in plain clothes
9    asked Gupta for consent to search and Gupta refused,
10   Deputy Craft said that if Gupta were refusing the search
11   then he must have something to hide.  There was no
12   marijuana odor in his truck, and no marijuana or anything
13   relating to it was found in the vehicle.  Gupta admitted
14   prior convictions for first degree burglary in 1985,
15   possession for sale of a controlled substance and
16   involuntary manslaughter in 1992 and offering to sell
17   methamphetamine in 1997.  He was in prison from 1997
18   to 2005.
19   Lodg. No. 13 at 3-6.

## IV.

## CLAIMS FOR RELIEF

Petitioner's 22 claims, as presented in his Petition and accompanying Memorandum of Points Authorities, are as follows:

(1) <u>Claim One:</u> The trial court erred by failing to *sua sponte* instruct the jury on the lesser included offense of simple possession because the jury could have

found Petitioner possessed the methamphetamine without the intent to sell. Pet. at 7; Pet. Part 1 at 1-13[5]; Traverse at 4-5.

(2) <u>Claim Two:</u> Petitioner's appellate counsel was ineffective by failing to raise all the issues Petitioner raised on state habeas corpus[6] and because counsel "intentionally, deliberately & recklessly, frustrated and sabotaged [P]etititoner's attempt to comply with the Court of Appeals' November 28, 2012 Order." Pet. at 7; Pet. Part 1 at 15-30; Pet. Part 9 at 7-13; Traverse at 5-6.

(3) <u>Claim Three:</u> Appellate counsel was ineffective by failing to challenge the denial of Petitioner's search and seizure motion. Pet. at 7; Pet. Part 9 at 15; Pet. Part 10 at 1-2; Traverse at 5-6.

(4) <u>Claim Four:</u> Appellate counsel was ineffective by failing to obtain a complete and adequate appellate record. Pet. at 8; Pet. Part 10 at 3-14; Traverse at 5-6.

(5) <u>Claim Five:</u> Petitioner was denied his Sixth Amendment right to counsel when he expressed a desire for an attorney to take over but was compelled by the trial court to proceed without an attorney. Pet. at 8; Pet. Part 11 at 15-22; Traverse at 6.

---

[5]     The Petition and supporting Memorandum consist of over 500 pages of background, argument, and exhibits supporting Petitioner's claims. For ease of reference and consistency, the Court adopts the numbering system suggested by Respondent when making paginated references, which tracks this Court's ECF numbering and division of the Petition into 11 parts and the Memorandum into four parts. <u>See</u> Respondent's Mem. at 8 n.4.

[6]     Petitioner, in a confusing manner, explains some issues counsel allegedly should have raised on appeal and merely references others in list format or by citation to other parts of the Petition. <u>See, e.g.</u>, Pet. Part 1 at 21-22. Out of an abundance of caution, the Court considers whether appellate counsel was ineffective by failing to raise all the claims Petitioner alleged on state habeas corpus.

12

1    (6) <u>Claim Six:</u>[7] The prosecution failed to disclose the identity of the plain-

2   clothes "Asian/Filipino/Pacific Islander" involved in the search of Petitioner's

3   truck in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d

4   215 (1963), and the trial court erred by (a) denying Petitioner's motion for new

5   trial based on the alleged <u>Brady</u> violation and perjured testimony of witnesses

6   Deputy Craft and Deputy Scharlin, (b) quashing the subpoena served on Detective

7   B. Thompson, and (c) denying Petitioner's motion for post-conviction discovery.

8   Pet. Mem. at 25-56; Traverse at 6-10.

9    (7) <u>Claim Seven:</u> Petitioner's Fourth Amendment right against unreasonable

10  searches and seizures was violated when Petitioner and his truck were searched,

11  and the trial court erred by (a) denying Petitioner's motion to suppress under

12  California Penal Code § 1538.5, (b) denying Petitioner's request for judicial notice

13  of a "Police Code-of-Silence" at the suppression hearing, (c) failing to provide a

14  cogently expressed or logically reasoned ruling, (d) not allowing Petitioner to be

15  fully heard at the suppression hearing, and (e) denying Petitioner's request to

16  reopen the suppression hearing.  Pet. Mem. at 57-63; Pet. Mem. Part 1 at 1-44;

17  Traverse at 10-12.

18   (8) <u>Claim Eight:</u> Petitioner was deprived of his rights to due process and a

19  fair trial because the police failed to retain the name of a ride-along witness present

20  at the scene of Petitioner's arrest who could have identified the "Asian-looking"

21  detective involved in the search, and the trial court erred by (a) quashing

22  Petitioner's related subpoena served upon Deputy Jensen, and (b) denying

23  Petitioner's "motion to dismiss or to produce material witness ride-along identity."

24  Pet. Mem. Part 1 at 45-53; Pet. Mem. Part 2 at 1-11; Traverse at 12-14.

25  _____

26  [7]    Petitioner numbered the claims in the Memorandum as "I" through "XVI."

27  The Court renumbers these claims, beginning with Claim Six, to maintain
    numerical consistency with the Petition.

28

1    (9) <u>Claim Nine:</u> Petitioner's court-appointed investigator performed an

2   "ineffective/inadequate" investigation because he failed to obtain video

3   surveillance from the In & Out Burger restaurant showing the Asian detective, thus

4   warranting (a) a new trial, (b) an evidentiary hearing, (c) dismissal of the case, or

5   (d) timely disclosure of the video surveillance from the prosecution.  Pet. Mem.

6   Part 2 at 12-42; Traverse at 14-17.

7    (10) <u>Claim Ten:</u> Petitioner's rights to a fair trial and to present a defense

8   were violated when the trial court failed to (a) grant Petitioner's request for judicial

9   notice of "police code-of-silence," (b) appoint a "police code-of-silence" expert to

10   testify at trial, and (c) instruct the jury on "police code of silence."  Pet. Mem. Part

11   2 at 43-55; Pet. Mem. Part 3 at 1-8; Traverse at 17-19.

12    (11) <u>Claim Eleven:</u> Petitioner's right to due process was violated because the

13   trial judge was biased.  Pet. Mem. Part 3 at 9-33; Traverse at 19-22.

14    (12) <u>Claim Twelve:</u> The trial court violated Petitioner's right to a fair trial

15   and to confront witnesses by restricting and then admonishing the jury to disregard

16   Petitioner's cross examination of Deputy Craft.  Pet. Mem. Part 3 at 34-37;

17   Traverse at 22-23.

18    (13) <u>Claim Thirteen:</u> The trial court violated Petitioner's right to due process

19   and a fair trial by rejecting Petitioner's proposed instruction on a defendant's

20   refusal to consent to search, and refusing to *sua sponte* instruct on how the jury

21   should view a judge's comment on the evidence.  Pet. Mem. Part 3 at 38-41;

22   Traverse at 23-24.

23    (14) <u>Claim Fourteen:</u> The trial court violated Petitioner's right to a fair trial

24   by instructing the jury that Petitioner's case was not a Three Strikes case under

25   California's Three Strikes Law.  Pet. Mem. Part 3 at 42-46; Traverse at 24-25.

26    (15) <u>Claim Fifteen:</u> The trial court violated Petitioner's rights to a fair trial

27   and to present a defense when it quashed Petitioner's subpoena of a toxicologist

28

who drafted a report indicating a hair follicle test showed Petitioner tested negative for marijuana intoxication.  Pet. Mem. Part 3 at 47-49; Traverse at 25-26.

(16) <u>Claim Sixteen:</u> The trial court violated Petitioner's due process rights by erroneously denying his foundational objection to the admission of chain of custody evidence.  Pet. Mem. Part 3 at 50; Pet. Mem. Part 4 at 1-2; Traverse at 26-27.

(17) <u>Claim Seventeen:</u> The prosecutor committed misconduct during closing argument by intentionally lying to the jury that Petitioner had already been convicted of the exact same counts for which he was on trial.  Pet. Mem. Part 4 at 3-8; Traverse at 27-29.

(18) <u>Claim Eighteen:</u> There was insufficient evidence to support a finding that Petitioner "had knowledge of the presence" of the controlled substance.  Pet. Mem. Part 4 at 9-15; Traverse at 29-33.

(19) <u>Claim Nineteen:</u> The trial court violated Petitioner's rights to due process and a fair trial when it instructed the jury that (a) in evaluating testimony it could consider whether a witness had been convicted of a felony, and (b) it must reach its verdict without any consideration of punishment.  Pet. Mem. Part 4 at 16-17; Traverse at 33.

(20) <u>Claim Twenty:</u> The trial court erroneously denied Petitioner's motion for production of trial transcripts for the purpose of preparing a motion for new trial, thereby making Petitioner "ineffective as pro. per. counsel."  Pet. Mem. Part 4 at 18-23.

(21) <u>Claim Twenty-One:</u> The cumulative effect of the errors in Petitioner's case resulted in a denial of due process.  Pet. Mem. Part 4 at 23-24; Traverse at 33.

(22) <u>Claim Twenty-Two:</u> There was insufficient evidence to support the civil forfeiture of $4,010 because there was no nexus between the seized funds and some illegal transaction.  Pet. Mem. Part 4 at 25-28; Traverse at 34-37.

In Respondent's Answer, Respondent contends all of Petitioner's claims fail on their merits.  Respondent also contends Claim Five is procedurally defaulted[8] and Claims One, Five, and part of Six, are barred by the non-retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

## V.

## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the

---

[8] Respondent contends Claim Five is procedurally barred in light of the Los Angeles County Superior Court's denial of the claim on the ground that Petitioner could have raised it on direct appeal, in addition to its denial of the claim on the merits.  Respondent's Mem. at 41-43; see also Lodg. No. 23 at 3-4.  Because the Court necessarily reviews the underlying merits of Claim Five as part of its consideration of Petitioner's allegation in Claim Two that appellate counsel was ineffective by failing to raise the claim (see Pet. Part 1 at 21), in the interest of judicial economy, this Court considers the claim on its merits rather than addressing the procedural default issue.  See 28 U.S.C. § 2254 (b)(2) (district court has authority to deny unexhausted claims on their merits); see also Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

16

1        United States; or (2) resulted in a decision that was based

2        on an unreasonable determination of the facts in light of

3        the evidence presented in the State court proceeding.

4    28 U.S.C. § 2254(d).  "'[C]learly established Federal law' for purposes of

5    § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e] [U.S.

6    Supreme] Court's decisions'" in existence at the time of the state court

7    adjudication.  White v. Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702, 1706, 188

8    L. Ed. 2d 698 (2014) (quoting Howes v. Fields, ___ U.S. ___, 132 S. Ct. 1181,

9    1187, 182 L. Ed. 2d 17 (2012)).  Additionally, however, "circuit court precedent

10   may be persuasive in demonstrating what law is clearly established and whether a

11   state court applied that law unreasonably."  Maxwell v. Roe, 628 F.3d 486, 494

12   (9th Cir. 2010) (internal quotation marks omitted).

13        Overall, AEDPA presents "a formidable barrier to federal habeas relief for

14   prisoners whose claims have been adjudicated in state court."  Burt v. Titlow, ___

15   U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

16   "a difficult to meet . . . and highly deferential standard for evaluating state-court

17   rulings, which demands that state-court decisions be given the benefit of the

18   doubt."  Pinholster, 131 S. Ct. at 1398 (internal citation and quotation marks

19   omitted).  On habeas review, AEDPA places on petitioners the burden to show that

20   the state court's decision "was so lacking in justification that there was an error

21   well understood and comprehended in existing law beyond any possibility for

22   fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, ___, 131 S. Ct.

23   770, 786-87, 178 L. Ed. 2d 624 (2011).  Put another way, a state court

24   determination that a claim lacks merit "precludes federal habeas relief so long as

25   fairminded jurists could disagree" on the correctness of that ruling.  Id. at 786.

26   Federal habeas corpus review therefore serves as "a guard against extreme

27   malfunctions in the state criminal justice systems, not a substitute for ordinary

28                        17

1  error correction through appeal." Id. (internal citation and quotation marks

2  omitted).

3       Where the last state court disposition of a claim is a summary denial, this

4  Court must review the last *reasoned* state court decision addressing the merits of

5  the claim under AEDPA's deferential standard of review. Maxwell, 628 F.3d at

6  495. See also Berghuis v. Thompkins, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L.

7  Ed. 2d 1098 (2010) (when a state supreme court denies discretionary review of a

8  decision on direct appeal, the appellate court's decision is the relevant state-court

9  decision for purposes of AEDPA's standard of review); Ylst v. Nunnemaker, 501

10  U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (holding that

11  California Supreme Court, by silently denying petition for review over appellate

12  decision, presumably did not intend to change the California Court of Appeal's

13  analysis).

14       Contrarily, when a state court "does not supply reasoning for its decision [on

15  a petitioner's claims]," the court must "engage in an 'independent review of the

16  record' and ascertain whether the state court's decision was 'objectively

17  unreasonable.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.), cert. denied, 134

18  S. Ct. 514 (2013) (quoting Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).

19  Notably, this does not operate as "*de novo* review." Id. (quoting Himes v.

20  Thompson, 336 F.3d 848, 853 (9th Cir. 2003)). That is, it "remains the petitioner's

21  burden to demonstrate that 'there was no reasonable basis for the state court to

22  deny relief.'" Id. (quoting Richter, 131 S. Ct. at 786).

23       Here, the California Court of Appeal's reasoned opinion disposing of

24  Petitioner's direct appeal, see Lodg. No. 13, stands as the last reasoned decision on

25  the merits of Claim One. Hence, Claim One must be reviewed under AEDPA's

26  deferential standard of review.

27

28

1    The Los Angeles County Superior Court denied Claims Two through Five,
2    in reasoned orders.  Lodg. Nos. 18-23.  These claims were summarily denied by
3    the California Court of Appeal and California Supreme Court.  Lodg. Nos. 24-27.
4    As such, the Court "looks through" the unexplained decisions to the Superior
5    Court's orders denying relief as the last reasoned decisions on the merits of Claims
6    Two through Five.   See Cannedy v. Adams, 706 F.3d 1148, 1157-59 (9th Cir.)
7    (holding that "look through" practice continues to apply on AEDPA review when
8    California Supreme Court has summarily denied either direct or collateral review
9    of claim previously adjudicated by lower court), as amended, 733 F.3d 794 (9th
10   Cir. 2013), cert. denied, 134 S. Ct. 1001 (2014).  Hence, Claims Two through Five
11   must be reviewed under AEDPA's deferential standard of review.
12    The Los Angeles County Superior Court denied Claims Six through Twenty-
13   Two because "Petitioner has failed to establish a prima facie case for relief" and
14   because "[t]he burden is on Petitioner to establish grounds for his release" with
15   citations to In re Crow, 4 Cal. 3d 613, 624 (1971) and People v. Duvall, 9 Cal. 4th
16   464, 474 (1995).  Lodg. No. 19.  These claims were summarily denied by the
17   California Court of Appeal and California Supreme Court.  Lodg. Nos. 24-27.
18   Despite the brevity of the Superior Court's order, the Court presumes that these
19   claims were adjudicated on the merits.  See Johnson v. Williams, ___ U.S. ___,
20   133 S. Ct. 1088, 1096, 185 L. Ed. 2d 105 (2013) ("When a state court rejects a
21   federal claim without expressly addressing that claim, a federal habeas court must
22   presume that the federal claim was adjudicated on the merits–but that presumption
23   can in some limited circumstances be rebutted."); Ramsey v. Perez, No. CV 13-
24   1421-DSF (DTB), 2014 WL 2511093, at *5 (C.D. Cal. June 2, 2014) (presuming
25   nearly identical superior court order adjudicated claim on the merits).  However,
26   because the Superior Court did explain its reasons for finding that Petitioner had
27   not presented a prima facie case for relief, the Court must "engage in an
28

19

1  'independent review of the record'" to determine whether the denial of Claims Six
2  through Twenty-Two were "objectively unreasonable." <u>Walker</u>, 709 F.3d at 939
3  (quoting <u>Delgado</u>, 223 F.3d at 982); <u>Ramsey v. Yearwood</u>, 231 F. App'x 623, 625
4  (9th Cir. 2007) (independently reviewing claim denied by the superior court for
5  failing to "state a prima facie claim"); <u>McShane v. Cate</u>, No. ED CV 09-1243-GW
6  (PJW), 2014 WL 3752030, at *9 (C.D. Cal. July 30, 2014) (same).

**VI.**

**DISCUSSION**

## A.   <u>Claim One, subclaim(c) of Claim Ten, and Claims Thirteen, Fourteen, and Nineteen Do not Warrant Habeas Relief</u> [9]

In Claim One, subclaim (c) of Claim Ten, and Claims Thirteen, Fourteen, and Nineteen, Petitioner argues that the trial court erred in instructing the jury.

### 1.   <u>State Instructional Error Claims on Federal Habeas Review</u>

The content of jury instructions is generally a matter of state law for which federal habeas relief is not available. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). When assessing a claim of instructional error on federal habeas review, "[t]he only question . . . is 'whether [a jury] instruction by itself so infected the entire trial that the resulting conviction violates due process.'" <u>Id.</u> at 72 (internal citation omitted); <u>see</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 191, 129 S. Ct. 823, 172 L. Ed. 2d 532 (2009). More specifically, when reviewing a purportedly "ambiguous instruction," the Court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." <u>McGuire</u>, 502 U.S. at 72 (internal quotation marks and citations omitted).

---

[9]   The Court addresses the claims in an order different from that suggested by the parties for clarity and to avoid repetition.

1   "The burden of demonstrating that an erroneous instruction was so
2   prejudicial that it will support a collateral attack on the constitutional validity of a
3   state court's judgment is even greater than the showing required to establish plain
4   error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52
5   L. Ed. 2d 203 (1977). To meet this burden, a habeas petitioner must show that the
6   instructional error "had [a] substantial and injurious effect or influence in
7   determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.
8   Ct. 1710, 123 L. Ed. 2d 353 (1993); see Hedgpeth v. Pulido, 555 U.S. 57, 129 S.
9   Ct. 530, 172 L. Ed. 2d 388 (2008) (applying Brecht harmless-error analysis to
10  instructional-error claim on federal habeas review). In assessing such prejudice,
11  "[t]he jury instruction may not be judged in artificial isolation, but must be
12  considered in the context of the instructions as a whole and the trial record."
13  McGuire, 502 U.S. at 72 (internal citation and quotation marks omitted). "[I]t
14  must be established not merely that the instruction is undesirable, erroneous, or
15  even universally condemned, but that it violated some [constitutional right]."
16  Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431
17  (1974) (internal quotation marks omitted).

18          **2.      Claim One Does Not Warrant Habeas Relief**

19          Petitioner first argues the trial court erred by failing to *sua sponte* instruct
20  the jury on the lesser included offense of simple possession because the jury could
21  have found that he possessed the methamphetamine without the intent to sell. See
22  Pet. at 7; Pet. Part 1 at 1-13; Traverse at 4-5. In its reasoned decision disposing of
23  Petitioner's direct appeal on May 31, 2012, the California Court of Appeal rejected
24  Petitioner's instructional error claim on its merits. See Lodg. No. 13 at 7-9.
25  Accordingly, the Court reviews the Court of Appeal's reasoned disposition of
26  Petitioner's claim as an "adjudication on the merits" subject to deference under
27  AEDPA. See 28 U.S.C. § 2254(d).

28

21

1

### a.   Relevant Trial Court Proceedings

2   During a hearing on jury instructions, the trial court asked the parties

3 whether there were any objections to the proposed instructions and the following

4 dialogue ensued:

5   [Prosecutor]:  Sorry.  I did have one concern.

6   When I submitted the instructions to you, I included a

7   lesser included, which I though[t] was sua sponte.

8   The Court:  It's only sua sponte if there's any

9   evidence whatsoever.

10   [Prosecutor]:  That was a concern.  I would agree

11   with the court.

12   The Court:  Mr. Gupta is not making any claim

13   that he possessed these items at all.  In fact, his defense is

14   th[at] he didn't even know it was there.  So there's no

15   rational evidentiary basis to include a lesser.

16 RT 1511.  Accordingly, the trial court did not instruct the jury that simple

17 possession of a controlled substance is a lesser included offense of possession for

18 sale of a controlled substance.

19

### b.   The State Court Decision

20   On direct appeal, Petitioner argued he was entitled to a jury instruction on

21 the lesser included offense of simple possession because the only direct evidence in

22 the record was that Petitioner had constructive or actual possession of the

23 methamphetamine by virtue of it being found in his truck, whereas the only

24 evidence of intent to sell was the circumstantial evidence of the detective's

25 opinion.  Lodg. No. 8 at 17-23.  The jury could have reasonably inferred from the

26 evidence that the drugs belonged to the Brazilians, and that Petitioner merely

27 possessed the drugs because the Brazilians had left the bag in Petitioner's work

28

1    truck. Id. at 23. Accordingly, without the alternative possession instruction,

2    Petitioner argued, the jury was more inclined to find guilt of possession for sale.

3    Id. at 23-26.

4         The Court of Appeal rejected Petitioner's instructional error claim,

5    reasoning the evidence did not support an inference that Petitioner possessed the

6    methamphetamine and knew of its presence and nature, but did not intend to sell it.

7    Lodg. No. 13 at 8. Further, even assuming instructional error, the Court of Appeal

8    concluded Petitioner was not prejudiced in light of the evidence against him,

9    including the large quantity of methamphetamine found in Petitioner's vehicle, the

10   packaging, cash, and lack of evidence that Petitioner was under the influence,

11   personally used the drug, or possessed it but did not intent to sell it. Lodg. No. 13

12   at 9. Consequently, the Court of Appeal rejected Petitioner's instructional error

13   claim.

14              c.    **Analysis**

15        As a general matter, the U.S. Supreme Court has never required a trial court

16   to instruct a jury on lesser-included offenses in a non-capital case on due process

17   grounds.[10]  See Beck v. Alabama, 447 U.S. 625, 638 n.14, 100 S. Ct. 2382, 65 L.

18   Ed. 2d 392 (1980) ("We need not and do not decide whether the Due Process

19   Clause would require the giving of such instructions in a noncapital case.").

20   Hence, the Ninth Circuit has held that instructional error claims based on the

21   failure of a state court to instruct on lesser-included offenses do not implicate

22   "clearly established federal law" and do not merit habeas relief. United States v.

23

24   [10]    For this Court to find a constitutional right to a lesser included offense
25   instruction in this non-capital case, it would require the application of a new rule of
     law. This Court may not undertake such an exercise in a habeas corpus
26   proceeding. Teague, 489 U.S. 288; Solis v. Garcia; 219 F.3d 922, 929 (9th Cir.
27   2000) (per curiam) (habeas relief for failure to instruct on lesser included offense
     in non-capital case barred by Teague).
28

Rivera-Alonzo, 584 F.3d 829, 834 n.3 (9th Cir. 2009); Solis v. Garcia; 219 F.3d 922, 929 (9th Cir. 2000) (failure of state court to instruct on lesser-included offense does not alone present a federal constitutional question cognizable in a federal habeas corpus proceeding).

However, the Ninth Circuit has recognized a cognizable federal constitutional claim *may* be stated where a state court has refused a requested lesser offense instruction which is consistent with the defendant's theory of defense. See Solis, 219 F.3d at 929 (stating "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule") (citing Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984)).  At the same time, as the Ninth Circuit made clear in Solis, this exception does not apply if there is insufficient evidence supporting the proffered lesser offense instruction. Id. at 929-30 (finding no constitutional error in refusal to give lesser-included voluntary manslaughter instruction where there was no "substantial evidence" supporting the instruction under state law); see also Cervantez v. Pliler, 360 F. App'x 737, 739 (9th Cir. 2009).

Even assuming Petitioner's claim is cognizable, the Court holds the Court of Appeal's decision was not unreasonable.  As the Court of Appeal recognized, the evidence did not support a lesser included offense instruction on simple possession.  The methamphetamine found in Petitioner's truck was packaged for sale in 23 individually-wrapped small bags placed within four larger Ziplock bags, and it was found with other packaging materials.  RT 336-37, 339, 345, 426-32, 910.  The sheer amount was so large that it would yield almost 12,500 individual doses of methamphetamine, and had a street value of $25,000.  Id. at 917-20.  Petitioner had three bindles of cash (two in the amount of $1,320 on his person and one in the amount of $1,370 in his truck), which were all within the range of the wholesale value for an ounce of methamphetamine.  Id. at 337-38, 342-43, 428-32.

24

1   There was no evidence Petitioner was under the influence of methamphetamine,

2   and no paraphernalia used to ingest the drug were found on Petitioner or in his

3   truck. Id. at 342-44, 1299.  Further, although Petitioner attempted to shift blame to

4   the alleged Brazilians, who he claimed had driven his truck, there was no evidence

5   that any of those people were users or sellers of methamphetamine.  Id. at 1288-90.

6   Finally, Petitioner denied he possessed the bag that contained the

7   methamphetamine.  Id. at 1284, 1289-90, 1299.  Because there was insufficient

8   evidence supporting a simple possession instruction, Petitioner's instructional error

9   claim is meritless.  See Solis, 219 F.3d at 929-30; Cervantez, 360 F. App'x at 739

10  (rejecting instructional error claim based on failure to give lesser-included offense

11  instruction because "the factual record was utterly devoid of any evidence that

12  would have supported [the instruction]").  Hence, the Court concludes the Court of

13  Appeal's decision was not "contrary to" or an "unreasonable application" of

14  "clearly established federal law." 28 U.S. C. § 2254(d)(1).  Accordingly, habeas

15  relief is not warranted on Claim One.

16   **3.    Subclaim (c) of Claim Ten Does Not Warrant Habeas Relief**

17          Petitioner argues in subclaim (c) of Claim Ten that his right to a fair trial

18  was violated because the trial court failed to instruct the jury on "police code of

19  silence."  Pet. Mem. Part 3 at 7-8; Traverse at 18-19.  In its denial disposing of

20  Petitioner's state habeas petition on October 3, 2012, the Los Angeles County

21  Superior Court rejected Petitioner's claim for failing to state a prima facie case for

22  relief, but did not explain its reasoning.  Lodg. No. 18 at 148-69; Lodg. No. 19.

23  Accordingly, the Court engages in an "independent review of the record" to

24  determine "whether the state court's decision was objectively unreasonable."

25  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

26  28 U.S.C. § 2254(d).

27  ///

28

1

### a.   Relevant Trial Court Proceedings

2     At the hearing on jury instructions, Petitioner proposed the following

3 handwritten instruction:

4                    POLICE CODE-OF-SILENCE

5                    There exists a police code-of-silence which

6                    "consists of one simple rule, an officer does not provide

7                    adverse information against a fellow officer." (Citation

8                    omitted.)

9                         Police code-of-silence forces some good officers to

10                   commit crimes or lie or cover up the abuses of their

11                   coworkers, and where officers will refuse to speak

12                   candidly about the misdeeds of their colleagues.

13                   (Citation omitted.)

14 CT 112, 120, 115; RT 1517.  The trial court declined to give the instruction.  RT

15 1517.

16

### b.   Analysis

17     As discussed in further detail below in subclaims (a) and (b) of Claim Ten,

18 the trial court denied Petitioner's request for judicial notice of a police code of

19 silence and appointment of a police code of silence expert.  Thus, no direct

20 evidence of a police code of silence was admitted at trial.  Accordingly, as with

21 Claim One, Petitioner's subclaim lacks merit because there was no evidence

22 warranting the instruction.  See Solis, 219 F.3d at 929-30; Cervantez, 360 F. App'x

23 at 739.

24     Hence, reviewing the record independently, the Court concludes the Los

25 Angeles County Superior Court's denial of Petitioner's subclaim was not an

26 "objectively unreasonable" application of clearly established federal law.  See

27 Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

28

26

28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on subclaim (c) of Claim Ten.

### 4.     Claim Thirteen Does Not Warrant Habeas Relief

Petitioner argues in Claim Thirteen that his right to due process and a fair trial was violated when the trial court rejected his proposed instruction on a defendant's refusal to consent to search, and by not *sua sponte* instructing on how the jury should view a judge's comment on the evidence.  Pet. Mem. Part 3 at 38-41; Traverse at 23-24.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 198-201; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

### a.     Relevant Trial Court Proceedings

Petitioner testified in his own defense that an alleged Asian plain-clothes officer asked to search his truck, and he responded "No, I'd like to go home, get something to eat, and go to sleep."  RT 1256.

Later, the following exchange occurred during the prosecutor's cross-examination of Petitioner:

> [Prosecutor]:  And they wanted to search your car, and you said no, right?
>
> [Petitioner]:  Correct.
>
> [Prosecutor]:  You said no, because you had $4,000 in three separate bindles on you and $25,000 worth of methamphetamine in your car and extra packaging materials for food; is that right?

1         [Petitioner]:  That's false.  I said no because I

2   know every person has a right to say no and refuse a

3   search, unless maybe they have a search warrant or

4   unless you go in some area like a courthouse or a jail

5   facility, then you're subject to search.  But out in society,

6   every person has a right to say no and refuse a search.

7         [Prosecutor]:  Your honor, object.  It's misstating,

8   foundation.

9         The Court:  The witness' last statement is stricken.

10   The objection is sustained.

11   RT 1308.

12       At the hearing on jury instructions, Petitioner proposed the following

13   handwritten instruction:

14   REFUSAL OF CONSENT TO SEARCH

15   Evidence of refusal to consent to search cannot be used

16   to prove guilt.  [¶]  (See People v. Wood (2002) 103 Cal.

17   App. 4th 803, 809; People v. May (1988) 44 Cal. 3d 309,

18   315; except as rebuttal or impeachment evidence[.])

19   CT 112, 115; RT 1513.  The trial court declined to give the instruction, explaining

20   to Petitioner that the instruction might have been warranted had the prosecutor

21   presented in his case-in-chief that Petitioner did not consent to search and then

22   argued that it showed a consciousness of guilt.  RT 1514.  However, the court

23   further explained, Petitioner had placed his state of mind into issue by testifying

24   that he did not want the police to search his vehicle.  Id. at 1513-14.  Because

25   Petitioner had placed his state of mind into issue regarding whether he actually

26   consented, the prosecutor was allowed to impeach him, and no instruction was

27   warranted.  Id. at 1513-14.

28

28

1    Petitioner also listed CALCRIM No. 3530 on his "Index and Disposition
2    Table" of proposed instructions, but did not ask for it during the hearing on jury
3    instructions.  CT 112; RT 1511-17.  CALCRIM No. 3530 reads as follows:

4                    Do not take anything I said or did during the trial
5              as an indication of what I think about the evidence, the
6              witnesses, or what your verdict should be.

7                    Now, I will comment on the evidence only to help
8              you decide the issues in this case.

9                    However, it is not my role to tell you what your
10             verdict should be.  You are the sole judges of the
11             evidence and believability of witnesses.  It is up to you
12             and you alone to decide the issues in this case.  You may
13             disregard any or all of my comments about the evidence
14             or give them whatever weight you believe is appropriate.
15   Judicial Council of Cal. Crim. Jury Instruction No. 3530.

16             **b.    <u>Analysis</u>**

17         Several circuit courts of appeals, including the Ninth Circuit, have suggested
18   that a prosecutor's comment that a suspect refused to allow a warrantless search
19   cannot be used as evidence of guilt.  <u>See</u> <u>United States v. Prescott</u>, 581 F.2d 1343,
20   1351-52 (9th Cir. 1978) (noting "refusal to consent to a warrantless search is
21   privileged conduct which cannot be considered as evidence of criminal
22   wrongdoing"); <u>see also</u> <u>Gasho v. United States</u>, 39 F.3d 1420, 1438-39 (9th Cir.
23   1994); <u>Glazier v. Cate</u>, No. CV 12-5692-JFW (PLA), 2014 WL 6769619, at *6
24   (C.D. Cal. Dec. 1, 2014) (collecting cases).  However, Petitioner has not pointed to
25   any Supreme Court authority holding that a prosecutor's comment on a suspect's
26   refusal to consent to a search violates the Constitution.  <u>See</u> <u>United States v. Rios</u>,
27   443 F. App'x 433 (11th Cir. 2011) ("We have no case law that squarely answers
28

1 the question before us–whether it is a violation of the Fourth or Fifth Amendments
2 for the government to comment at trial on a defendant's refusal to consent to a
3 warrantless search"); Glazier, 2014 WL 6769619 at *6.  Concomitantly, Petitioner
4 has failed to point to any Supreme Court authority, and the Court is unaware of
5 any, requiring an instruction when a prosecutor comments or otherwise raises
6 through questioning a refusal to consent to search.  Accordingly, because there is
7 no clearly established federal law governing Petitioner's claim, the Court has no
8 authority to grant relief on Petitioner's claim.  See Carey v. Musladin, 549 U.S. 70,
9 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) ("Given the lack of holdings from
10 [the Supreme] Court regarding [petitioner's claim], it cannot be said that the state
11 court unreasonably applied clearly established Federal law.") (citation omitted)
12 (internal quotation marks omitted).

13       Petitioner also claims his federal due process rights were violated when the
14 trial court failed to *sua sponte* instruct on the judicial comment on evidence.
15 Petitioner claims the California Constitution, Penal Code, and case law dictate that
16 "[i]f the court comments on the evidence, the court has a sua sponte duty to give
17 [CALCRIM No. 3530]," and the parties indicate that the bench notes for the
18 instruction require such a *sua sponte* duty.  Pet. Mem. Part 3 at 39-40; Answer at
19 87; Traverse at 24.  Even assuming Petitioner's claim is cognizable, Petitioner has
20 not explained what comments the judge made that warranted the instruction.[11]  See
21 Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011) (conclusory allegations not
22 supported by specific facts do not warrant habeas relief); Blackledge v. Allison,
23 431 U.S. 63, 75 n.7, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("the petition is
24
25 _____
26 [11]     To the extent Petitioner contends the "evidence" the trial court improperly
27 commented on was his instruction to the jury that Petitioner's case was not a Three
   Strikes case, see Pet. Mem. at 45-46, that argument is addressed next in Claim
28 Fourteen.

1  expected to state facts that point to a real possibility of constitutional error")

2  (citation and internal quotation marks omitted).

3       Moreover, viewing "the context of the instructions as a whole and the trial

4  record," the instruction was sufficiently covered by other instructions. McGuire,

5  502 U.S. at 72 (internal citation and quotation marks omitted). The trial court

6  instructed that the jury alone must decide what the facts are based on the evidence

7  presented, and must judge the credibility and believability of the witnesses. See

8  CT 225, 227. The court also instructed, in language nearly identical to CALCRIM

9  No. 3530, that "[i]t is not my role to tell you what your verdict should be. Do not

10 take anything I said or did during the trial as an indication of what I think about the

11 facts, the witnesses, or what your verdict should be." CT 232. Thus, even if there

12 was error, the state court could have reasonably concluded the substance of

13 CALCRIM No. 3530 was adequately covered by other instructions. See George v.

14 Haviland, 506 F. App'x 583, 584 (9th Cir. 2013) (state court reasonably concluded

15 that instructional error was harmless and thus did not violate due process because

16 the substance of petitioner's proposed instruction was adequately covered by other

17 instructions).

18      Hence, reviewing the record independently, the Court concludes the Los

19 Angeles County Superior Court's denial of Petitioner's claim was not an

20 "objectively unreasonable" application of clearly established federal law. See

21 Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

22 28 U.S.C. § 2254(d)(1). Accordingly, habeas relief is not warranted on Claim

23 Thirteen.

24      **5.    Claim Fourteen Does Not Warrant Habeas Relief**

25      Petitioner argues in Claim Fourteen that the trial court violated his right to a

26 fair trial by instructing the jury that his case was not a three strikes case under

27 California's Three Strikes Law. Pet. Mem. Part 3 at 42-46; Traverse at 24-25.

28

Petitioner contends that although he has only two strikes, he was still subject to the Three Strikes law, and therefore the trial judge "lied to . . . or mislead the jury" into believing the case was not a Three Strikes case.  Pet. Mem. Part 3 at 42.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 202-06; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

### a.    Relevant Trial Court Proceedings

It was alleged by amended information that Petitioner's prior convictions for burglary in 1985 and involuntary manslaughter in 1993 were "strikes" within the meaning of California's Three Strikes Law.[12]  CT 136.  However, before trial the prosecutor indicated he was pursuing the case as a "presumed second strike case."  RT A-10.  The court explained to Petitioner that even though he had three potential strikes which could have subjected him to an indeterminate life sentence, it was the policy of the district attorneys office in nonviolent drug cases such as Petitioner's to pursue the case only as a second strike case.  Id. at A-11.  Petitioner indicated he understood.  Id.

At another pre-trial hearing, the prosecutor requested the trial court to order Petitioner to not raise the issue of punishment before the jury.  RT 21.  The prosecutor indicated that Petitioner, in the previous trial, "had taken it upon

---

[12]    Thus, had Petitioner admitted both strike convictions or had they both been found true by the court, Petitioner could have been subject to an indeterminate sentence of 25 years to life.  See Cal. Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A).

himself to put in front of the jury that he . . . believed he was facing life and it was a three-strikes case." Id.  The prosecutor emphasized they were not pursuing the case as "a life case," and, regardless of whether it was a life case or not, the issue of punishment was not for the jury to decide.  Id.  The court explained to Petitioner:

> The jurors are not supposed to consider punishment in terms of making a decision.  There's a good reason for that.  They're to remain objective.  If they consider what the punishment might be, it may influence their decision.
>
> Believe me, I did not wake up and was not born yesterday.  I have seen three-strikers try to get in front of the jury for their sympathy of what might befall you if you were convicted.  There's no way around the argument that there was some other reason for doing it, and I'll order you not to go into that area at any time during this trial.

Id. at 22.  Petitioner said he understood, and the court indicated that if Petitioner decided to go into the area of punishment he would be admonished in front of the jury.  Id. at 22-23.

During Petitioner's cross-examination of Deputy Craft, Petitioner asked "[i]n your report, you did write about me being a three-striker[?]" RT 415.  The prosecutor's objection was sustained and the court then instructed the jury to disregard the question.  Id.

Following Deputy Craft's testimony, the court then instructed the jury as follows:

33

1        Ladies and gentlemen, before we call the next

2       witness, [Petitioner] did ask a question that contained the

3       word "three-strikes" in it.  This is not a "three-strikes"

4       case.  You, as jurors, regardless of what kind of case it is,

5       are never supposed to consider what punishment might

6       arise as a result of your decision.  So punishment is not

7       part of that.  You are supposed to disregard that.  I want

8       just to make that point.  There are some jurors who have

9       opinions about the three-strikes law and so forth.  This is

10      not a three-strikes case.

11  RT 421-22.

12      **b.**  **Analysis**

13    "It is well established that when a jury has no sentencing function, it should

14  be admonished to reach its verdict without regard to what sentence might be

15  imposed . . . .  Information regarding the consequences of a verdict is therefore

16  irrelevant to the jury's task."  Shannon v. United States, 512 U.S. 573, 579, 114 S.

17  Ct. 2419, 129 L. Ed. 2d 459 (1994) (citation, footnote and internal quotation marks

18  omitted); see also United States v. Olano, 62 F.3d 1180, 1201 (9th Cir. 1995) ("[I]t

19  is inappropriate for a jury to consider or be informed of the consequences of their

20  verdict.").  Under California law, "[a] defendant's possible punishment is not a

21  proper matter for jury consideration."  People v. Thomas, 51 Cal. 4th 449, 486

22  (Cal.) (citation and internal quotation marks omitted), cert. denied, 132 S. Ct. 136

23  (2011); see also People v. Nichols, 54 Cal. App. 4th 21, 24-26, 62 (Cal. Ct. App.

24  1997) (trial court was not required to inform jury of defendant's potential sentence

25  in "three strikes" case, and properly instructed jury not to consider issue of

26  punishment).

27

28

              34

1   Although Petitioner's sentence was doubled within the meaning of Three

2   Strikes Law because he had a prior strike conviction and was found guilty of a

3   felony in the instant case (see RT 2742; Cal. Penal Code §§ 667(b)-(i),

4   1170.12(a)), he was never subject to an indeterminate "three strikes" life sentence

5   because the prosecutor did not pursue the additional strike.  But regardless of

6   whether Petitioner's case could technically be considered a three strikes case,

7   "petitioner had no constitutional right to advise the jury that he was being

8   prosecuted under California's Three Strikes law."  Lacy v. Lewis, 123 F. Supp. 2d

9   533, 552 (C.D. Cal. 2000); see also Barnes v. Yates, No. EDCV 08-0751-AG (RC),

10  2010 WL 3488233, at *17 (C.D. Cal. June 3, 2010), aff'd, 526 F. App'x 775 (9th

11  Cir. 2013).  Because the trial judge properly instructed under both federal and

12  California law that the jury could not consider punishment, the state court

13  reasonably denied Petitioner's claim.  See Elmore v. Pillar, No. C 99-4276 TEH,

14  2000 WL 1006538, at *8 (N.D. Cal. July 12, 2000) (rejecting argument that

15  prosecutor improperly said defendant's case was not a Three Strikes case even

16  though defendant's sentence was doubled under Three Strikes Law for having two

17  strikes because jury was instructed not to consider the penalty that might be

18  imposed when it rendered its judgment).

19  Hence, reviewing the record independently, the Court concludes the Los

20  Angeles Count Superior Court's denial of Petitioner's claim was not an

21  "objectively unreasonable" application of clearly established federal law.  See

22  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

23  28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

24  Fourteen.

25      **6.   Claim Nineteen Does Not Warrant Habeas Relief**

26  Petitioner argues in Claim Nineteen that the trial court violated his rights to

27  due process and a fair trial when it instructed the jury that (a) in evaluating

28

35

testimony it could consider whether a witness had been convicted of a felony, and (b) it must reach its verdict without any consideration of punishment.  Pet. Mem. Part 4 at 16-17; Traverse at 33.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 223-24; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

### a.   **Relevant Trial Court Proceedings**

The prosecutor proposed CALCRIM No. 226, which states in relevant part that the jury "may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony" and lists factors the jury may consider.  RT 1501; CT 227-28.  Among the factors listed is "Has the witness been convicted of a felony?"  CT 228.  The prosecutor also proposed CALCRIM No. 316, which states:

> If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness's testimony.  The fact of a conviction does not necessarily destroy or impair a witness's credibility.  It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.

Id. at 229.

During the hearing on jury instructions, Petitioner objected to CALCRIM No. 226 because it "seems cumulative to instruction 316."  RT 1506.  The trial overruled the objection because the instructions were standard jury instructions and

36

1   CALCRIM No. 316 simply added clarification to CALCRIM No. 226.  Id. at 1506-
2   07.
3          The prosecutor also proposed CALCRIM No. 3550, which provides the jury
4   with a litany of standard pre-deliberation instructions.  See CT 231-32.  Part of that
5   instruction reads: "You must reach your verdict without any consideration of
6   punishment."  Id. at 232.  Petitioner objected to this part of the instruction because
7   he "didn't see it in the original CALCRIM."  RT 1510.  The court indicated the
8   sentence was part of the standard CALCRIM No. 3550, and did not remove it from
9   the instruction given to the jury.  Id. at 1510-11; CT 232.

**b.   Analysis**

11         Regarding Petitioner's challenge to the instructions allowing the jury to
12  consider whether a witness had been convicted of a felony, Petitioner makes no
13  claim the instructions are wrong or otherwise improper under federal or California
14  law.  See People v. Harrison, 35 Cal. 4th 208, 254 (2005) ("a witness's prior
15  conviction of a felony [was a] factor[ the jury] could consider in determining the
16  believability of a witness"), cert. denied, 546 U.S. 890 (2005).  Rather, he merely
17  contends CALCRIM No. 226 is "cumulative to" CALCRIM No. 316 and this
18  repetition had a prejudicial effect of putting too much emphasis on his prior felony
19  convictions.  See Pet. Mem. Part 4 at 16.  Petitioner fails to cite any authority
20  supporting his proposition that he was prejudiced by the trial court repeating a
21  proper instruction.  The fact that the jury was repeatedly instructed with correct
22  statements of the law would tend to reduce any potential prejudice.  See, e.g.,
23  Sanchez v. Jacquez, No. C 10-556 YGR (PR), 2012 WL 3647453, at *8 (N.D. Cal.
24  Aug. 23, 2012) (finding no prejudice where "trial court repeatedly instructed the
25  jurors as to how to regard expert witness testimony"); Lopez v. Salinas, No. 1:10-
26  cv-02325-DLB (HC), 2011 WL 1743690, at *8-9 (E.D. Cal. May 6, 2011) (even if
27  trial court erred in giving instruction, trial was not fundamentally unfair where jury

1   was instructed on how to evaluate a witness's testimony, which was again re-stated
2   in CALCRIM No. 226).

3         Regarding Petitioner's claim that the court improperly instructed the jury it
4   must reach its verdict without any consideration of punishment, Petitioner contends
5   the "sentence paragraph is not even in the CALCRIM jury  instructions that [he]
6   reviewed and researched into." Pet. Mem. Part 4 at 16.  Petitioner adds that the
7   trial judge "just threw that sentence paragraph into CALCRIM 3550 on his own"
8   and "creat[ed] his own jury instruction." Id.  Petitioner's claim wholly lacks merit
9   because the standard CALCRIM No. 3550 jury instruction includes the statement
10  "You must reach your verdict without any consideration of punishment." See
11  Judicial Council of Cal. Crim. Jury Instruction No. 3530; see also Caddel v. Foulk,
12  No. EDCV 13-2116-JSL(AJW), 2014 WL 2557836, at *10 (C.D. Cal. Apr. 4,
13  2014), accepted by, 2014 WL 2557851 (C.D. Cal. June 6, 2014).  Petitioner fails to
14  point to any prior versions of the CALCRIM or explain what he allegedly
15  "reviewed and researched into" that supports his argument.   See Greenway, 653
16  F.3d at 804; Blackledge, 431 U.S. at 75 n.7.

17        Hence, reviewing the record independently, the Court concludes the Los
18  Angeles County Superior Court's denial of Petitioner's claim was not an
19  "objectively unreasonable" application of clearly established federal law.  See
20  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also
21  28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim
22  Nineteen.

23  **B.   Claim Five Does not Warrant Habeas Relief**

24        Petitioner argues in Claim Five that he was denied his Sixth Amendment
25  right to counsel when, on February 8, 2010, he expressed a desire for an attorney to
26  take over but was compelled by the trial court to proceed without one. Pet. at 8;
27  Pet. Pt. 11 at 15-22; Traverse at 6.  In its denial disposing of Petitioner's state
28

habeas petition on February 26, 2013, the Los Angeles County Superior Court rejected Petitioner's claim on its merits.  Lodg. Nos. 22, 23.  Accordingly, the Court reviews the Superior Court's reasoned disposition of Petitioner's claim as an "adjudication on the merits" subject to deference under AEDPA.  See 28 U.S.C. § 2254(d).

### 1.   Relevant Trial Court Proceedings

Sometime before February 24, 2009, Petitioner waived his right to counsel and elected to represent himself.  CT 15, 17.[13]

On February 8, 2010, two days prior to the start of his trial, Petitioner's father appeared in court and asked the court "to consider . . . taking [Petitioner] off pro per status . . ."  RT C17-C18.  The trial court noted "no judge would ever say it was a good idea to represent yourself[,]" but confirmed with Petitioner that he had been warned "many times" about the problems with self representation and that he was choosing to proceed by himself despite "knowing that it is not the wisest course to take."  Id. at C18.  Petitioner explained he made the decision because he was present at the scene of his arrest and saw "how everything occurred," whereas an attorney was not there.  Id.  The trial court reiterated Petitioner had already been granted pro se status and again reminded him:

> [W]hen you walk into a courtroom in trial, I'm
> going to treat you just like an attorney.  If you fall all
> over yourself, trying to defend yourself, that's to your
> detriment, not to your benefit.  A lawyer can generally do

---

[13]   Petitioner indicates he began proceeding pro se on January 20, 2009.  See Lodg. No. 7, ACT at 2.  The transcript of the hearing in which Petitioner waived his right to counsel and executed waiver forms under Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), is not in the record.  See CT 15. Petitioner makes no challenge to his initial Faretta waiver, but rather challenges only his alleged request for an attorney at the later, February 8, 2010 hearing.

39

1        a better job, even though they were not at the scene.  And

2        I would generally tell you that it's a big mistake to

3        represent yourself, even if you were there, because you

4        can pass this same information on to a competent,

5        qualified lawyer.

6            I would give you time if you wanted a lawyer to

7        represent you, so that that person could become familiar.

8        But, on the other hand, I can't take away your right to

9        represent yourself.  So if you want to walk into this buzz

10       saw of a trial representing yourself, with all of the risks

11       that go along with that, then I will allow you to do that.

12 Id. at C19.

13     The trial court then asked Petitioner whether he had "any thoughts in

14 reconsidering representing yourself at this time," and Petitioner responded "<u>not at</u>

15 <u>this time, no.</u>"  Id. at C20 (emphasis added).  The trial court then warned Petitioner

16 "once we get started, there's no time to change your mind.  This is a good time to

17 make that last decision . . . ."  Id.  The trial court indicated the matter was a "two

18 strikes case" carrying significant penalties, and reminded Petitioner again "if you

19 want to change your mind, not that your father says you should, but because you

20 believe it's probably better that a skilled lawyer represent you, then you tell me and

21 . . . I will appoint somebody to represent you."  Id. at C21.  The court further

22 explained, "I just want you to make an intelligent choice before we get started,

23 because once the jury is in here and you say oh, I'd like to have an attorney, it's too

24 late."  Id.

25     Petitioner replied: "<u>I wouldn't mind giving up the pro per status for an</u>

26 <u>attorney and if I can get the identity of the detective that was involved in the search</u>

27 <u>and arrest, then I'll have no problem.</u>"  Id. at C21 (emphasis added).  The court

28

40

responded that there was "no guarantee" Petitioner would receive the discovery he was seeking if an attorney was appointed. Id. at C21-C22. The court indicated it appeared Petitioner was on a "fishing expedition" regarding his discovery, and then said: "Let's get back to the main point. If you want to represent yourself . . . I'll keep it the way it is. If you are having second thoughts, this is the time to let me know . . . ." Id. at C22-C23. The court then said "I want you to be clear with me as to what your intentions are," to which Petitioner responded "I guess I'd like to proceed by myself." RT at C23 (emphasis added).

The trial court asked Petitioner yet again whether he wished to have counsel appointed, and Petitioner responded: "At this time I'd like to continue representing myself; but once I identify the detective, I'll go ahead and relinquish pro per status." Id. at C24-C25 (emphasis added). The following colloquy then ensued:

> The Court:  No.  This is what I'm trying to tell
> you.
>
> [Petitioner]:  I understand.
>
> The Court:  Listen carefully.  Once the trial begins,
> you're going to -- if you're your own attorney, that's the
> way it will be.  And you're not going to be able to jump
> up and say, "I want an attorney," because it will be too
> late.  That's why I'm talking to you about it now.  You
> can't wait to see what happens and then change your
> mind once the trial is in progress.  You need to make up
> your mind. You've been pro per all this time, and you
> actually started the other trial where you were
> representing yourself.  You can do that again, or you can
> tell me that you want an attorney.  But I need to know
> clearly, and I need to know today.

41

1          [Petitioner]:  <u>Yeah.  I'll represent myself just</u>

2          <u>because I'm trying to find out the detective involved</u>.

3   <u>Id.</u> at C25 (emphasis added).

4          **2.    <u>The State Court Decision</u>**

5          In his state habeas corpus petition filed in the Los Angeles County Superior

6   Court, Petitioner contended that at the February 8, 2010 hearing, he expressed a

7   desire for an attorney to take over the case but was compelled by the trial judge to

8   proceed by himself.  Lodg. No. 22 at 3.  Petitioner contended he clearly expressed

9   his desire for an attorney when he said he "wouldn't mind giving up pro per status

10  for an attorney and if I can get the identity of the detective that was involved in the

11  search and arrest, then I'll have no problem" and when he stated ". . . I'll go ahead

12  and relinquish pro per status." <u>Id.</u> (citing RT C21, C25).

13         The Superior Court denied the claim in a reasoned order.  The court noted

14  that under California law, once <u>pro per</u> status has been granted, a defendant does

15  not have a right to change that status and the matter is within the court's discretion

16  to allow the defendant to change his mind.   <u>See</u> Lodg. No. 23 at 2-3 (citing, *inter*

17  *alia*, <u>People v. Lawley</u>, 27 Cal. 4th 102, 148-51 (2002)).  The court concluded

18  Petitioner's statement that he "wouldn't mind giving up pro per status . . ." was not

19  a demand for an attorney, and found it was not unequivocal but conditional upon

20  discovery issues already heard by the court.   <u>See id.</u>  The court further found that,

21  because Petitioner's request was made two days before trial and after all the

22  witnesses had been subpoenaed for trial, it was untimely.  <u>See id.</u> at 3.  Finally, the

23  court denied the claim because it should have been raised on direct appeal, with

24  citation to <u>In re Harris</u>, 5 Cal. 4th 813, 825, 829 (1993) and <u>In re Dixon</u>, 41 Cal. 2d

25  756, 759 (1953).  <u>See</u> Lodg. No. 23 at 3-4.

26         **3.    <u>Analysis</u>**

27

28

42

It is beyond dispute that "[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004); see Gideon v. Wainwright, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). It is just as well settled, however, that a defendant also has the right to "proceed without counsel when he voluntarily and intelligently elects to do so." Faretta, 422 U.S. at 807.

"There can be some tension in these two principles." Marshall v. Rodgers, ___ U.S. ___, 133 S. Ct. 1446, 1449, 185 L. Ed. 2d 540 (2013). As the Supreme Court has explained, "'[t]here can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.'" Id. at 1449-50 (quoting Faretta, 522 U.S. at 832). The Supreme Court has further explained that California resolved this tension by adopting a framework under which trial judges are afforded discretion when considering postwaiver requests for counsel; their decisions on such requests must be based on the totality of the circumstances, "includ[ing] the quality of [the defendant's] representation of [himself], the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay [that] might reasonably be expected to follow the granting of such a motion." Rodgers, 133 S. Ct. at 1450 (quoting Lawley, 27 Cal. 4th at 149) (internal quotation marks omitted; last alteration in original).

The Supreme Court has also directed that, upon being presented with a challenge to a trial judge's decision under California's discretionary frame work, all a federal habeas court is empowered to do under § 2254(d)(1) is:

43

1   to observe that, in light of the tension between the Sixth

2   Amendment's guarantee of "the right to counsel at all

3   critical stages of the criminal process," <u>Tovar</u>, <u>supra</u>, at

4   80-81[], and its concurrent promise of "a constitutional

5   right to proceed without counsel when [a criminal

6   defendant] voluntarily and intelligently elects to do so,"

7   <u>Faretta</u>, <u>supra</u>, at 807[], it cannot be said that California's

8   approach is contrary to or an unreasonable application of

9   the "general standard[s]" established by the [Supreme]

10   Court's assistance-of-counsel cases.

11   <u>Rodgers</u>, 133 S. Ct. at 1450.

12       The Court so observes.  Accordingly, because there is no clearly established

13   federal law governing Petitioner's claim,[14] the Court has no authority to grant relief

14   on Petitioner's claim.  <u>See id.</u> at 1450-51; <u>Musladin</u>, 549 U.S. at 77.   Hence, the

15   Court concludes the Superior Court's decision was not "contrary to" or an

16   "unreasonable application" of "clearly established federal law." 28 U.S.C.

17   § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim Five.

18   **C.   <u>Claim Six Does not Warrant Habeas Relief</u>**

19       Petitioner argues in Claim Six that the prosecution failed to disclose the

20   identity of an alleged plain-clothes "Asian/Filipino/Pacific Islander" involved in

21   the search of his truck in violation of <u>Brady</u>, 373 U.S. 83.  Relatedly, Petitioner

22   also contends the trial court erred by (a) denying Petitioner's motion for new trial

23

24   [14]   For this Court to find otherwise, it would require the application of a new

25   rule of law.  As explained, this Court may not undertake such an exercise in a

26   habeas corpus proceeding.  <u>Teague</u>, 489 U.S. 288; <u>see</u> <u>Marshall</u>, 133 S. Ct. at 1450

27   (finding that the Ninth Circuit improperly attempted to "refine or sharpen a general

28   principle of Supreme Court jurisprudence into a specific legal rule that [the
Supreme] Court has not announced.")

44

based on the alleged <u>Brady</u> violation and perjured testimony of Deputy Craft and Scharlin, (b) quashing the subpoena served on Detective B. Thompson, and (c) denying Petitioner's motion for post-conviction discovery.  Pet. Mem. at 25-56; Traverse at 6-10.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 18-48; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  <u>Walker</u>, 709 F.3d at 939 (internal quotation marks and citations omitted); <u>see also</u> 28 U.S.C. § 2254(d).

### 1.    Relevant Trial Court Proceedings

At the hearing on Petitioner's motion to suppress the evidence discovered during the search of his truck, Deputy Craft testified he and Deputy Scharlin pulled Petitioner over for failing to stop at a stop sign.  ART B4-B5.  Deputy Craft testified he requested Petitioner's consent to search, and Petitioner said "Yeah, but I got to get home."  <u>Id.</u> at B9.  Deputy Craft also testified he and Deputy Scharlin were the only deputies present during the initial traffic stop and search.  <u>Id.</u> at B18, B20.  He further testified there was never a plain-clothes officer at the scene.  <u>Id.</u> at B20.  He believed there was a civilian ride-along with another unit on the date of the traffic stop.  <u>Id.</u> at B-21; <u>see also</u> RT 418-19.

Deputy Scharlin testified to substantially the same details as Deputy Craft.  However, Deputy Scharlin said he could not make out everything that was said in the conversation between Petitioner and Deputy Craft due to noise from the parking lot and nearby freeway, and because he was focusing on the safety of his partner and securing the scene.  ART at B38.  Deputy Scharlin also testified there was no one in plain clothes during the initial traffic stop and search.  <u>Id.</u> at B43-B44.

45

Petitioner testified a plain-clothes individual asked him if the officers could search his truck, and Petitioner replied "no, I want to go home, get something to eat, go to sleep." Id. at B54-55. Petitioner also testified either Deputy Craft or Scharlin then stated "oh, he doesn't want us to search his car. He must have something to hide inside" and then searched the truck. Id. at B55. Petitioner argued at the suppression hearing that Deputy Scharlin lied that there was no plain-clothes individual in an effort to cover-up Deputy Craft's lies in the arrest report. Id. at B73-B74. Petitioner also requested judicial notice that the police were operating under a code of silence "which forces some good officers to lie or commit crimes to cover up abuses of their co-workers." Id.

In denying Petitioner's motion to suppress, the court acknowledged there are officers who lie, just like there are other witnesses who lie, and defendants who lie. Id. at B79. However, Petitioner had failed to show the officers knew in advance anything about Petitioner such that they would set him up and lie. Id. The court also ruled as follows:

> With respect to this mystery plain-clothes person . . . I think your argument's a little inconsistent [with the request for judicial notice]. If all these officers are part of a code of silence and they are going to protect one another, then I don't see why this person's identity would not be revealed and he would just come in and lie too. According to your theory, even if there were no consent then, he would be prepared to say that there was to cover up the misconduct, whether it was directed by Craft or whose ever idea it was, although from your description it wounds like that plain-clothes officer was the one who instigated all of this.

46

1            So if I'm to believe that these officers will say

2            whatever is necessary to sustain or support their actions

3            and to cover up for one another, I don't see how

4            concealing the identity of this other officer really

5            advances that, since I would have to assume that he

6            would be prepared to come in and lie as well.

7    Id. at B80-B81.

8            Later, during trial, Petitioner indicated he intended to call Deputy

9    Thompson, Deputy Jensen and others as defense witnesses.[15]  In his offer of proof

10   as to the witnesses, Petitioner claimed there was a "ride-along . . . eyewitness [who

11   could] identify the Asian Detective who may be a COBRA member," and

12   Thompson "is currently working with the COBRA team, so he would have the

13   roster in his possession to identify the Asian detective."  RT 1003, 1008.  The court

14   commented "we have been through this" and that his offer of proof was "very

15   speculative."  Id. at 1004.  Petitioner maintained "he was there," and the court

16   responded "You say that.  That's what you say.  Okay?  There's been no evidence

17   whatsoever to establish that at this point."  Id.  The court also noted "from your

18   offer of proof, you can find an Asian in almost every organization.  You have so

19   many rungs of the ladder to walk up in order to get to the point where it becomes

20   relevant in this trial."  Id. 1005; see also id. at 1009.  The court further stated it was

21   insufficient for Petitioner to "[j]ust establish that there happens to be somebody of

22   Asian decent who happens to be an employee . . . in the COBRA Unit . . ."  Id. at

23   1005-06.  The court concluded the relevance of Thompson was not substantial

24   enough to warrant his testimony at trial.  Id. at 1008.

25   _____

26   [15]    Petitioner refers to Thompson interchangeably as "Detective" and "Deputy."
     Petitioner also alleges his investigator and a third party served a subpoena on "B.
27   Thompson."  Pet. Mem. at 52.

28

47

1    Petitioner then attempted to make his showing of the existence of the alleged

2    Asian officer at a California Evidence Code § 402 hearing.[16] Id. at 1202-04.

3    Petitioner called Officer John Leitelt who said he arrived at the In & Out Burger

4    restaurant parking lot after Petitioner was arrested.  Id. at 1203-04, 1206.  He did

5    not remember whether he had a ride-along with him but he checked his logs and

6    they did not show a ride-along.  Id. at 1203-04.  Leitelt further testified there was

7    no Asian detective at the scene.   Id.  He did not know if there was a Asian on the

8    COBRA unit, and said that only one officer was close to the description given by

9    Petitioner but that officer was Hispanic, not Asian.  Id. at 1205-06.  Based on this

10   testimony, Petitioner decided not to call the officer.  Id. at 1207.

11       After trial, Petitioner filed and argued a motion for post-conviction

12   discovery and a motion for a new trial.  Petitioner sought the identity of the Asian

13   deputy who he "presumed" was a member of a seven-member Cobra Unit.  Id. at

14   2409-10.  He believed this deputy's name was "Pak," and contended there was "a

15   high probability" he was the plain-clothes officer who was involved with the

16   search.  Id. at 2411.

17       The court pointed out that Petitioner did not identify the alleged deputy in

18   his declaration supporting the motions, and, while Petitioner may "feel[] confident

19   that Deputy Pak is the plain-clothed detective that was involved in the search of the

20   vehicle," Petitioner never demonstrated he was able to identify the deputy.  Id. at

21   2412, 2414; 2425-26.

22   ///

23   **2.**   **Analysis**

24

25   [16]   California courts conduct 402 hearings outside the presence of the jury to
26   decide preliminary questions of fact upon which the admissibility of evidence
27   depends.  People v. Superior Court (Blakely), 60 Cal. App. 4th 202, 209 n.6 (Cal.
28   Ct. App. 1997); Cal. Evid. Code § 402(b).

1    "In <u>Brady</u>, the Supreme Court held that '[t]he suppression by the prosecution

2    of evidence favorable to an accused upon request violates due process where the

3    evidence is material either to guilt or to punishment, irrespective of the good faith

4    or bad faith of the prosecution." <u>Runningeagle v. Ryan</u>, 686 F.3d 758, 769 (9th

5    Cir. 2012) (quoting <u>Brady</u>, 373 U.S. at 87). "The elements of a claim for a <u>Brady</u>

6    violation are that '[t]he evidence at issue must be favorable to the accused, either

7    because it is exculpatory, or because it is impeaching; that evidence must have

8    been suppressed by the State, either willfully or inadvertently; and prejudice must

9    have ensued.'" <u>Gonzalez v. Wong</u>, 667 F.3d 965, 981 (9th Cir. 2011), <u>cert. denied</u>,

10   133 S. Ct. 155 (2012) (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S.

11   Ct. 1936, 144 L. Ed. 2d 286 (1999)).

12   While Petitioner maintained before the trial court that a plain-clothes officer

13   was involved in the search, who was a member of a COBRA team and also of

14   "Asian/Filipino/Pacific Islander" descent, he never established that the person

15   actually existed. He attempted to establish identity before trial, during his defense,

16   and in post-trial motions, but never made a showing sufficient to support his claim.

17   Further, the only evidence before the court, besides Petitioner's own testimony,

18   was that there was no such deputy. Both Deputy Craft and Deputy Scharlin

19   testified they were the only deputies present during the initial traffic stop and

20   search, and no plain-clothes deputy was there. ART B18, B20, B43. Officer

21   Leitelt also testified at the 402 hearing that there was no Asian detective at the

22   scene. RT 1203-04. Finally, as the trial court ruled, "there is nothing to indicate

23   that this particular deputy . . . had anything to do with [Petitioner's] search and

24   arrest in this case." <u>Id.</u> at 2420.

25   In the Petition, Petitioner presents nothing more than a long-winded

26   summary of his attempts before the trial court to discover the identity of the alleged

27   detective. Pet. Mem. at 25-56. Petitioner repeatedly cites "defendant's Trial

28

49

Exhibit A" (see, e.g., id. at 32, 34, 36-37, 39, 41, 43), but this exhibit merely consists of pictures of the In & Out Burger restaurant parking lot and the vicinity. See Lodg. No. 7 ACT at 189-93.  Petitioner appears to be referencing a different exhibit, because he describes it as the police duty roster for the night he was arrested.  See, e.g., Pet. Mem. at 30-32.  This exhibit was attached to one of his motions filed in the trial court.  See CT 186.  However, Petitioner admits the roster did not show the identity of the officer because it did not list the unmarked police cars for that night, and Petitioner claims the Asian detective arrived in an unmarked vehicle.[17]  See Pet. Mem. at 33.  Finally, Petitioner cites his own declaration and trial testimony in support of his claim.  See Pet. Mem. 38, 41 (citing CT 332); Traverse at 7 (Petitioner alleging he established the plain-clothes officer exists by his own "in-court testimony under oath").  Thus, outside of his own self serving statements and declaration, Petitioner has presented nothing showing the person actually exists.  Without more, this is insufficient to warrant federal habeas relief.  Phillips v. Woodford, 267 F.3d 966, 987 (9th Cir. 2001) (rejecting Brady claim where petitioner failed to prove that a report existed); Downs v. Hoyt, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting Brady claim as too speculative).  Because Petitioner has not shown the prosecutor was in possession of exculpatory or impeaching evidence and failed to disclose the evidence to the defense, Petitioner has not shown the prosecution violated Brady by suppressing evidence.

Petitioner's remaining subclaims, see Pet. Mem. at 40-56, are also contingent on Petitioner being able to make some showing that the alleged Asian plain-clothes officer actually exists.  Because he has not done so, the subclaims

---

[17]     This exhibit also was not admitted into evidence because the trial court ruled it was not relevant.  RT 1332-33, 1341.

1  similarly lack merit.  See Greenway, 653 F.3d at 804; Blackledge, 431 U.S. at 75

2  n.7.

3       Moreover, Petitioner's subclaim challenging the denial of his new trial

4  motion fails for the additional reason that it does not state a cognizable claim.  A

5  "motion for new trial in a criminal case is a [California] statutory right[,]" People

6  v. Dillard, 168 Cal. App. 2d 158, 167, 335 P.2d 702 (Cal. Ct. App. 1959), and

7  violations of state procedural law do not give rise to claims cognizable on federal

8  habeas review.  See McGuire, 502 U.S. at 67-68; see also Herrera v. Collins, 506

9  U.S. 390, 408, 113 S. Ct. 853, 864, 122 L. Ed. 2d 203 (1993) ("The Constitution

10  itself, of course, makes no mention of new trials.").  Accordingly, Petitioner's

11  subclaim challenging the trial court's denial of his new trial motion it is not

12  cognizable in this proceeding.  See Gilliam v. Hedgepeth, No. CV 08-1242 VAP

13  (SS), 2014 WL 6750223, at *23 (C.D. Cal. Oct. 22, 2014) ("to the extent [claim] is

14  premised on the trial court's denial of Petitioner's new trial motion, such as

15  suggesting the trial court abused its discretion in denying the motion, it is not

16  cognizable in this proceeding"), accepted by 2014 WL 6751488 (C.D. Cal. Nov.

17  25, 2014).

18       Similarly, Petitioner's subclaim challenging the denial of his discovery

19  requests under California law are not cognizable.  See McGuire, 502 U.S. at 67-68;

20  Carrion v. McDonald, No. CV 11-8705-GHK (RNB), 2012 WL 6840585, at *28

21  (C.D. Cal. Aug. 24, 2012) (alleged violation of California criminal discovery

22  statutes is not cognizable on federal habeas review), accepted by, 2012 WL

23  1988384 (C.D. Cal. June 4, 2012).  Finally, the Supreme Court has held "[t]here is

24  no general constitutional right to discovery in a criminal case."  See  Weatherford

25  v. Bursey, 429 U.S. 545, 559, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); see also

26  Gray v. Netherland, 518 U.S. 152, 167-68, 116 S. Ct. 2074, 135 L. Ed. 2d 457

27

28

1    (1996) (a defendant has no constitutional right to notice of the evidence the State

2    plans to use against him).[18]

3         Hence, reviewing the record independently, the Court concludes the Los

4    Angeles County Superior Court's denial of Petitioner's claim was not an

5    "objectively unreasonable" application of clearly established federal law.  See

6    Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

7    28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim Six.

8    **D.    Claim Seven Does not Warrant Habeas Relief**

9         Petitioner argues in Claim Seven that his Fourth Amendment right against an

10   unreasonable search and seizure was violated when he and his truck were searched,

11   and the trial court erred by (a) denying his motion to suppress under California

12   Penal Code § 1538.5, (c)[19] failing to provide a cogently expressed or logically

13   reasoned ruling, (d) not allowing him to be fully heard at the suppression hearing,

14   and (e) denying his request to reopen the suppression hearing.  Pet. Mem. at 57-63;

15   Pet. Mem. Part 1 at 1-44.  In its denial disposing of Petitioner's state habeas

16   petition on October 3, 2012, the Los Angeles County Superior Court rejected

17   Petitioner's claim for failing to state a prima facie case for relief, but did not

18   explain its reasoning.  Lodg. No. 18 at 49-63, 68-97; Lodg. No. 19; Traverse at 10-

19   12.  Accordingly, the Court engages in an "independent review of the record" to

20   determine "whether the state court's decision was objectively unreasonable."

21   _____

22   [18]    For this Court to find otherwise, it would require the application of a new

23   rule of law.  As explained, this Court may not undertake such an exercise in a

     habeas corpus proceeding.  Teague, 489 U.S. 288; see Turner v. Calderon, 281

24   F.3d 851, 868 (9th Cir. 2002); Haley v. Steward, No. CV-02-1087-PHX-DGC

25   (CRP), 2006 WL 1980649, *15 (D. Ariz. July 11, 2006).

26   [19]    Subclaim (b) of Claim Seven, alleging the court erred in denying Petitioner's

27   request for judicial notice of a police code-of-silence, is discussed below with

     subclaims (a) and (b) of Claim Ten.

28

1  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

2  28 U.S.C. § 2254(d).

3       If a petitioner has had a full and fair opportunity to litigate a Fourth

4  Amendment claim in state court, the claim is not cognizable in a federal habeas

5  proceeding.  Stone v. Powell, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3045-46, 49 L.

6  Ed. 2d 1067 (1976).  In determining whether the petitioner had a full and fair

7  opportunity in state court, "[t]he relevant inquiry is whether petitioner had the

8  opportunity to litigate his claim, not whether he did in fact do so or even whether

9  the claim was correctly decided."  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th

10  Cir. 1996).  California provides criminal defendants with such a full and fair

11  opportunity through the procedures of California Penal Code § 1538.5, which

12  permits defendants to move to suppress evidence on the ground that it was

13  obtained in violation of the Fourth Amendment.  See Gordon v. Duran, 895 F.2d

14  610, 613-14 (9th Cir. 1990); see also Locks v. Sumner, 703 F.2d 403, 408 (9th

15  Cir.), cert. denied, 464 U.S. 933 (1983).

16       Here, as summarized in the background section of Claim Five, Petitioner

17  filed a motion to suppress the evidence under California Penal Code § 1538.5,

18  challenging the search of his truck.  Lodg. No. 7, ACT 1-43.  The trial court

19  conducted a one-day evidentiary hearing on the motion, taking testimony from

20  Deputy Craft, Deputy Scharlin, and Petitioner, and hearing argument from both

21  sides.  See ART B1-B78.  Further, Petitioner again raised aspects of his motion to

22  suppress during trial, in his motion for a new trial, and his post-trial discovery

23  motions.  In particular, while ruling on one of Petitioner's last discovery motions,

24  the trial court noted that the issue of the purported Asian detective – to whom

25  Petitioner allegedly told could not search his truck – had been previously addressed

26  by the court and "thoroughly argued before both trials and, at the very least, by two

27  judges separately before your last trial" and it had "been addressed and addressed

28

1    and addressed" and consistently resolved against Petitioner.  RT 2416.  Following

2    trial, Petitioner again challenged the denial of his motion to suppress on habeas

3    corpus before the trial court, and at each level of habeas review with substantial

4    briefing in each petition.  Lodg. No. 18 at 49-97; Lodg. No. 24, 49-97; Lodg. No.

5    26, 49.1-97.[20]  Thus, regardless of whether the motion to suppress was correctly

6    decided, Petitioner's Fourth Amendment claim is not cognizable on federal habeas

7    review because he had a full and fair opportunity to litigate it in state court.  See

8    Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981) (holding petitioner had full

9    and fair opportunity to litigate Fourth Amendment claim when, among other

10   things, claim had been considered and rejected by state courts at all levels of

11   review).  Accordingly, habeas relief is not warranted on Claim Seven.

12   **E.    Claim Eight Does not Warrant Habeas Relief**

13          Petitioner argues in Claim Eight that he was deprived of his rights to due

14   process and a fair trial because the police failed to retain the name of a ride-along

15   witness present at the scene of Petitioner's arrest who could have identified the

16   "Asian-looking" detective involved in the search, and the trial court erred by

17   (a) quashing Petitioner's related subpoena served upon Deputy Jensen, and (b)

18   denying Petitioner's "motion to dismiss or to produce material witness ride-along

19   identity."  Pet. Mem. Part 1 at 45-53; Pet. Mem. Part 2 at 1-11; Traverse at 12-14.

20   In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the

21   Los Angeles County Superior Court rejected Petitioner's claim for failing to state a

22   prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 98-

23   116; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of

24   the record" to determine "whether the state court's decision was objectively

25

26   ───────────────

27   [20]    The lodged copy of the habeas petition filed in the California Supreme Court
     is missing page 49.  See Lodg. No. 26.

28

1  unreasonable." Walker, 709 F.3d at 939 (internal quotation marks and citations
2  omitted); see also 28 U.S.C. § 2254(d).

3        **1.**       **Relevant Trial Court Proceedings**

4        As mentioned in the summary of the trial court proceedings relevant to
5  Claim Six, Petitioner indicated he intended to call Deputy Jensen as a defense
6  witness.[21]  In his offer of proof as to the witnesses, Petitioner alleged watch
7  sergeants designate ride-alongs, and because Jensen was noted as a watch sergeant
8  on a duty roster, he would be able to identify the ride-along.  RT 1002-03.
9  Petitioner further claimed the "ride-along . . . eyewitness [could in turn] identify
10 the Asian Detective who may be a COBRA member."  RT 1003, 1008.  The court
11 precluded the witness because "there was no evidence at all that the ride-along had
12 anything to do with your investigation, [or] has anything to say . . . that would lead
13 to any admissible evidence in the case," and therefore was not relevant.  RT 1003,
14 1008; see also RT 1340.  The court further commented that merely identifying
15 Jensen as a watch sergeant on the night of the arrest was insufficient to establish
16 his relevance.  RT 1003.

17       Petitioner also filed discovery motions attempting to obtain the identity of
18 the ride-along, including a "motion to dismiss or to produce material witness ride-
19 along identity," which were all denied by the trial court.  See, e.g., CT 164, 174-75,
20 182, 197.  In denying the "motion to dismiss or to produce material witness ride-
21 along identity," the court noted "we have pretty much thoroughly thrashed this
22 issue."  RT C10.  The court ruled that although Petitioner claims there was
23 exculpatory evidence "out there" that the prosecutors and investigators did not
24 disclose to him, "that has not been borne out by any of the hearings on this issue,
25 which have been numerous, not just me, but I've gone through this file and I've

26 ───────────────

27 [21]     Petitioner alleges his investigator and a third party served a subpoena on
   Deputy Jensen.  See Pet. Mem. Part 1 at 52; Pet. Mem. Part 2 at 4, 6.
28

1    seen that you've raised this issue on numerous occasions and have essentially

2    gotten nowhere in getting to your ultimate conclusion as to what you believe."  RT

3    C10.  The court also noted the prior testimony from Deputy Craft and Deputy

4    Scharlin stating the ride-along was not part of the investigation in Petitioner's case.

5    Id. at C11.  The court denied the motion but allowed Petitioner to renew it after

6    trial.  Id.  Petitioner re-asserted the issue after trial, and the trial court denied relief.

7    CT 307, 312-14; RT 2401-02, 2409-20.

8              **2.    Preservation of Evidence Claims**

9              The government violates a defendant's due process rights when it fails to

10   preserve evidence in a criminal case if: (1) the evidence "might be expected to play

11   a significant role in the suspect's defense"; (2) the evidence has exculpatory value;

12   (3) the exculpatory value is apparent before the evidence is destroyed; (4) the

13   defendant is "unable to obtain comparable evidence by other reasonably available

14   means"; and (5) the government acted in bad faith.  California v. Trombetta, 467

15   U.S. 479, 488-89, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (citations and footnote

16   omitted); see also Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L.

17   Ed. 2d 281 (1988) (adding the bad faith requirement).

18             **3.    Analysis**

19             As a threshold matter, the Court notes Petitioner's claim is based on pure

20   speculation.  Petitioner contends "[w]e can presume" that the alleged ride-along

21   "probably" had a conversation with the deputy driving him about the identity of the

22   "Asian-looking detective."  Pet. Mem. Part 1 at 46; Pet. Mem. Part 2 at 8.  Such

23   speculation and conjecture is simply insufficient to warrant habeas relief.  See

24   Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (vague speculation or mere

25   conclusions unsupported by record not sufficient to state habeas claim); Greenway,

26   653 F.3d at 804; Blackledge, 431 U.S. at 75 n.7.

27

28

1   Further, Petitioner has failed to show the ride-along had any exculpatory

2   value because he made no showing that the ride-along was present when the

3   alleged Asian plain-clothes officer purportedly searched Petitioner and his truck.

4   RT B21; see also id. at C6-C7.  Deputy Craft testified that a person who he

5   "believe[d] . . . was a civilian ride-along with another unit," arrived after the search

6   occurred and after Petitioner was hand-cuffed.  RT B21.  Moreover, Craft testified

7   ride-alongs do not have contact with people during the traffic stops, do not touch

8   any of the evidence, and do not have anything to do with the investigation.  RT

9   419-20.  Accordingly, the ride-along could not have provided any exculpatory

10  information about the initial stop and search.

11  Petitioner's subclaims fail for the same reason.  In his subclaim related to

12  Deputy Jensen, Petitioner contends Jensen could identify the ride-along, who

13  purportedly rode with Deputy Leitelt, because Jensen was the watch sergeant who

14  prepared the duty roster for the night of the arrest.  Pet. Mem. Part 1 at 52; Pet.

15  Mem. Part 2 at 6.  But, as Petitioner acknowledges, the duty roster does not have a

16  notation indicating Leitelt had a ride along as it does for other officers on patrol

17  that night.  See CT 186 (duty roster); ART B19 (petitioner admitting that "the ride-

18  along we're looking for was a passenger in Officer Leitelt's car . . . [and i]f you

19  look on the roster, [Leitelt] doesn't have a ride-along named next to his name");

20  Pet. Mem. Part 1 at 46, 49-50.  While Petitioner maintains there was a separate

21  roster for unmarked cars that he never received, as the trial court recognized, there

22  was no evidence that the ride-long had anything to do with the search or

23  investigation and was therefore not relevant.  See RT 1003, 1008.

24  Finally, the discovery and motion to dismiss aspects of Petitioner's

25  subclaims are not cognizable for the same reasons discussed in Claim Six.

26  Hence, reviewing the record independently, the Court concludes the Los

27  Angeles County Superior Court's denial of Petitioner's claim was not an

28

1    "objectively unreasonable" application of clearly established federal law.  See

2    Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

3    28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

4    Eight.

5    **F.    Claim Nine Does not Warrant Habeas Relief**

6          Petitioner argues in Claim Nine that his court-appointed investigator

7    performed an "ineffective/inadequate" investigation because he failed to obtain

8    video surveillance from the In & Out Burger restaurant showing the Asian plain-

9    clothes deputy, thus warranting (a) a new trial, (b) an evidentiary hearing, (c)

10   dismissal of the case, or (d) timely disclosure of the video surveillance from the

11   prosecution.  Pet. Mem. Part 2 at 12-42; Traverse at 14-17.  In its denial disposing

12   of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County

13   Superior Court rejected Petitioner's claim for failing to state a prima facie case for

14   relief, but did not explain its reasoning.  Lodg. No. 18 at 117-47; Lodg. No. 19.

15   Accordingly, the Court engages in an "independent review of the record" to

16   determine "whether the state court's decision was objectively unreasonable."

17   Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

18   28 U.S.C. § 2254(d).

19         **1.    Relevant Trial Court Proceedings**

20         The trial court appointed Alan Rush as an investigator for Petitioner.  He

21   obtained sixteen photos of the In & Out Burger restaurant parking lot and

22   surroundings and they were admitted at trial.  Lodg. No. 6, ACT 187-93; Lodg. No.

23   7, ACT 3-9.

24         Later, on August 2, 2010, Petitioner subpoenaed the restaurant for video

25   surveillance footage of the "parking lot area" from January 15, 2009, between the

26

27

28

                                             58

1  hours of 8:10 p.m. and 8:50 p.m.. Lodg. No. 7, ACT 41-47. The restaurant
2  responded that it did not have any such video surveillance. RT 2724-26.[22]

3        On August 20, 2010, Petitioner filed a "motion to dismiss (or if denied, for
4  new trial/mistrial) based on ineffective inadequate investigation." He alleged Rush
5  told Petitioner the restaurant may have had interior video surveillance, but it did
6  not have exterior video evidence. CT 414, 419. He further alleged another
7  investigator, Gary Cooper, met with Petitioner after trial and told Petitioner "yes,
8  they do have video surveillance at the In & Out Burger parking lot." Id. at 424.
9  Petitioner argued, based on Cooper's statements to him, video surveillance exists
10 that "definitely will show" the Asian plain-clothes deputy involved in the search of
11 Petitioner's truck. Id. at 425-26. The trial court denied the motion based on the
12 restaurant's written response to the subpoena indicating there was no such video.
13 RT 2724-26.

14     **2.**   <u>**Analysis**</u>

15       As a threshold matter, Petitioner has not established he had the constitutional
16 right to effective investigative assistance. Although the Ninth Circuit has held due
17 process requires, "when necessary, the allowance of investigative expenses or
18 appointment of investigative assistance for indigent defendants in order to insure
19 effective preparation of their defense by their attorneys," <u>Williams v. Stewart</u>, 441
20 F.3d 1030, 1053 (9th Cir. 2006) (citation omitted), the Court is not aware of any
21 Supreme Court or Ninth Circuit authority stating due process requires the effective
22 assistance of an investigator. <u>See</u> <u>Carson v. Adams</u>, No. CV 09-9194-CAS (AGR),

23

24 ──────────────────

25 [22]   The restaurant's written response to the subpoena is not included in the
26 record. However, it is clear from the discussion between Petitioner and the trial
27 court that the restaurant "acknowledged in their declaration and response to [the]
   subpoena that there is no video" of the time period requested by Petitioner. RT
28 2724-26.

1    2012 WL 6864593, at *26 (C.D. Cal. Sept. 11, 2012) (rejecting claim that

2    investigator provided ineffective assistance because no Supreme Court precedent

3    required "reasonably competent investigator"), accepted by 2013 WL 169845

4    (C.D. Cal. Jan. 14, 2013); Brown v. Carey, No. C 06-0264 WHA (PR), 2011 WL

5    5444251, at *8-9 (N.D. Cal. Nov. 9, 2011) (finding no Supreme Court authority

6    establishing or recognizing constitutional right to effective assistance of

7    investigator); see also Milton v. Morris, 767 F.2d 1443, 1447 (9th Cir. 1985)

8    (noting pro se defendant does not have due process right to access particular legal

9    resource "so long as he is afforded some alternative means for assistance in the

10   preparation of his defense").  Accordingly, because there is no clearly established

11   federal law governing Petitioner's claim, the Court has no authority to grant relief

12   on Petitioner's claim.  See Musladin, 549 U.S. at 77.

13        Even assuming such a right exists, Petitioner has not shown he is entitled to

14   relief.  Petitioner admits none of the pictures obtained by Rush "showed any signs

15   of video surveillance at the In & Out Burger parking lot."  Pet. Mem Part 2 at 14.

16   Rush also informed Petitioner there was no exterior video, and the restaurant's

17   response to Petitioner's subpoena confirmed no video from the night of the search

18   existed.  See Pet. Mem. Part 2 at 28, 34; RT 2724-26.  Accordingly, Petitioner has

19   not established his investigator was inadequate or ineffective.  See Chambers v.

20   Grounds, No. CV 10-6080-VBF (PLA), 2012 WL 5391959, *9 n.9 (C.D. Cal. Sept.

21   21, 2012) (even assuming a constitutional right to effective investigative assistance

22   exists, petitioner not entitled to relief because he failed to show "that his

23   investigator performed deficiently and that there is a reasonable probability his

24   investigator's alleged acts or omissions had a negative effect on the verdict"),

25   accepted by 2012 WL 5391730 (C.D. Cal. Nov. 2, 2012).

26        Petitioner's remaining subclaims, including his allegations that Rush

27   "conspired with the prosecution team, the deputy district attorney . . . , and with the

28

60

1  two sheriff deputies," and "lied in stating that there was no exterior video

2  surveillance" (see Pet. Mem Part 2 at 15, 21, 35), fail for the same reason.

3  Petitioner has failed to show that video surveillance on the night of the arrest

4  exists, and therefore the subclaims necessarily fail.   See Greenway, 653 F.3d at

5  804; Blackledge, 431 U.S. at 75 n.7.

6          Hence, reviewing the record independently, the Court concludes the Los

7  Angeles County Superior Court's denial of Petitioner's claim was not an

8  "objectively unreasonable" application of clearly established federal law.   See

9  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

10  28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

11  Nine.

12  **G.     Subclaims (a) and (b) of Claim Ten, and subclaim (b) of Claim Seven,**

13          **Do not Warrant Habeas Relief**

14          Petitioner argues in Claim Ten that his rights to a fair trial and to present a

15  defense were violated because the trial court failed to (a) grant Petitioner's request

16  for judicial notice of "police code-of-silence," and (b) appoint a "police code-of-

17  silence" expert to testify at trial.  Pet. Mem. Part 2 at 43-55; Pet. Mem. Part 3 at 1-

18  6; Traverse at 17-18.  In subclaim (b) of Claim Seven, Petitioner also argues the

19  trial court should have granted Petitioner's request for judicial notice of a police

20  code of silence at the suppression hearing.  Pet. Mem. Part 1 at 11-14.  In its denial

21  disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles

22  County Superior Court rejected Petitioner's subclaims for failing to state a prima

23  facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 64-67, 148-

24  67; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of

25  the record" to determine "whether the state court's decision was objectively

26  unreasonable."  Walker, 709 F.3d at 939 (internal quotation marks and citations

27  omitted); see also 28 U.S.C. § 2254(d).

28

### 1.     Relevant Trial Court Proceedings

As mentioned in the summary of the trial court proceedings relevant to Claim Six, at the suppression hearing, Petitioner requested judicial notice of a police code of silence "which forces some good officers to lie or commit crimes to cover up abuses of their co-workers."  RT B73-B74.

In denying Petitioner's motion to suppress and request for judicial notice, the court acknowledged there are officers who lie, just like there are other witnesses who lie, and defendants who lie.  Id. at B79.  However, Petitioner had failed to show the officers knew in advance anything about Petitioner such that they would set him up and lie.  Id.  The court explained:

> . . . My problem is I just don't see why these officers would, one, single you out on what happened to be just a basic traffic violation and have it expand immediately into something else.  You have offered me no suggestion by your own statements and testimony [that] they didn't run your license or anything . . . that happened after the fact so they didn't know that they were potentially dealing with someone who had a criminal record or that they . . . could set up in any sort of way or that they should have a particular concern for you because of your criminal past.
>
> So, without knowing anything about you, I just don't find it credible that they would determine that they should lie . . .

Id. at B80-B81.

Petitioner later filed a motion requesting appointment of a "Police 'Code of Silence' Expert," and renewed his request for judicial notice, based in part on

1    newspaper articles.  Lodg. No. 6, ACT 86-118.  The court denied the request for a

2    police code of silence expert because Petitioner had not shown (1) such an expert

3    exists; (2) the expert would be reasonably necessary for the presentation of his

4    defense; and (3) the "proposition that someone may be untruthful in order to

5    protect a friend or colleague is not beyond the common knowledge of lay people."

6    ART at D17; CT 88.  The court denied the renewed request for judicial notice

7    because it had already been decided, and because Petitioner relied on an alleged

8    code of silence in Sacramento in 2001 or 2002, which had little probative value to

9    whether such a code of silence existed in the Los Angeles Police Department in

10    2009.  ART at D18; CT 88.

11              **2.     Exclusion of Evidence Claims**

12              It is well established that a criminal defendant has a Sixth Amendment right

13    to present a complete defense.  <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 93 S.

14    Ct. 1038, 35 L. Ed. 2d 297 (1973).  The right to present a defense is one of the

15    fundamental principles of justice that may be violated by the erroneous exclusion

16    of critical defense evidence.  <u>DePetris v. Kuykendall</u>, 239 F.3d 1057, 1062 (9th

17    Cir. 2001).  However, exclusion of evidence that is only marginally relevant or

18    repetitive, or more prejudicial than probative cannot give rise to a constitutional

19    violation.  <u>Crane v. Kentucky</u>, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d

20    636 (1986); <u>see also</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326-27, 126 S. Ct.

21    1727, 164 L. Ed. 2d 503 (2006).  Hence, States have broad latitude under the

22    Constitution to establish rules excluding defense evidence from criminal trials, "so

23    long as they are not arbitrary or disproportionate to the purposes they are designed

24    to serve."  <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L.

25    Ed. 2d 413 (1998) (internal quotation marks omitted); <u>see also</u> <u>Wood v. Alaska</u>,

26    957 F.2d 1544, 1549 (9th Cir. 1992) (holding trial courts have "wide latitude" to

27    exclude unreliable or marginally relevant evidence).  Finally, the Supreme Court

28

1   has noted "[o]nly rarely have we held that the right to present a complete defense

2   was violated by the exclusion of defense evidence under a state rule of evidence."

3   Nevada v. Jackson, ___ U.S. ___, 133 S. Ct. 1990, 1992, 186 L. Ed. 2d 62 (2013)

4   (citations omitted).

5       **3.   Analysis**

6       The evidence excluded here is just the type of repetitive and marginally

7   relevant evidence that may be excluded without offending the Constitution.  First,

8   as the trial court noted, Petitioner made no showing that the officers knew anything

9   about him such that they would set up the traffic stop in advance to bust him for

10  drugs, and then lie about it later under a "code of silence."  Indeed, the officers

11  testified at trial that they were monitoring the intersection because of multiple

12  citizen complaints of motorists running the stop signs and near collisions, not

13  because they had information about any particular person in the area.  See RT 330,

14  358, 423-24.  Further, Craft testified he "[ran] Mr. Gupta's information via my

15  computer system," after Petitioner was stopped, searched, handcuffed and placed in

16  the officers' police car, and while his partner was searching Petitioner's truck.  RT

17  235-36, 345, 426.  Without any evidence that Petitioner was somehow targeted in

18  advance, evidence of a vast police "code of silence" allegedly utilized to cover up

19  lies regarding Petitioner's traffic stop would have had little probative value and a

20  tendency to confuse the issues.  Further, Petitioner testified to the existence of the

21  alleged Asian detective, and Petitioner denied that he consented to the search of his

22  truck - essentially testifying the officers lied about what happened.  RT 1256-62.

23  Petitioner also argued, vehemently, that the officers lied and suggested that they

24  had an interest in helping each other out by lying.  See, e.g., RT 1567, 1576-77,

25  1580, 1578-79 ("they are partners and they are friends . . . they do work together,

26  so we see that there is a team bias already, as far as Sheriff deputies versus

27  someone being arrested"), 1584-85 ("there is a motivation to set me up").

28

1    Accordingly, such an exclusion of repetitive and marginally relevant evidence does
2    not violate due process.

3            Petitioner's subclaim regarding appointment of an expert fails because U.S.
4    Supreme Court "cases do not squarely address whether a court's exercise of
5    discretion to exclude expert testimony violates a criminal defendant's
6    constitutional right to present relevant evidence.  Nor do they clearly establish 'a
7    controlling legal standard' for evaluating discretionary decisions to exclude the
8    kind of evidence at issue here."  Moses, 555 F.3d at 758-59 (citations omitted); see
9    also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of
10   Moses and the present, the Supreme Court has not decided any case either
11   'squarely address[ing]' the discretionary exclusion of evidence and the right to
12   present a complete defense or 'establish[ing] a controlling legal standard' for
13   evaluating such exclusions."), cert. denied, 132 S. Ct. 593 (2011).  Accordingly,
14   because there is no clearly established federal law governing Petitioner's claim, the
15   Court has no authority to grant relief on Petitioner's claim.  See Musladin, 549
16   U.S. at 77; Nero v. Vazquez, No. CV 12-2111 FMO AS, 2014 WL 1289723, at *11
17   (C.D. Cal. Mar. 27, 2014).

18           Hence, reviewing the record independently, the Court concludes the Los
19   Angeles County Superior Court's denial of Petitioner's claim was not an
20   "objectively unreasonable" application of clearly established federal law.  See
21   Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also
22   28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on subclaims
23   (a) and (b) of Claim Ten, and subclaim (b) of Claim Seven.

24   ///

25   ///

26   **H.    Claim Eleven Does not Warrant Habeas Relief**

27

28

1   Petitioner argues in Claim Eleven that his right to due process was violated
2   because the trial judge was biased.  Specifically, Petitioner contends the trial judge
3   was biased because (a) he said <u>pro per</u> inmates are "no good" and improperly
4   referred to "Russians," (b) he said he did not think Petitioner was going to find the
5   alleged Asian detective, (c) he failed to disclose that his wife was a practicing Los
6   Angeles County district attorney, (d) he declared that Petitioner appeared before
7   him "a half dozen times" when in fact Petitioner appeared only four times, (e) he
8   relied on hearsay when he said his wife does not maintain friendships or contacts
9   with district attorneys at the San Fernando courthouse, (f) he improperly quashed a
10  subpoena upon himself to testify as a witness during trial about his bias.  <u>See</u> Pet.
11  Mem. Part 3 at 9-33; Traverse at 19-22.  In its denial disposing of Petitioner's state
12  habeas petition on October 3, 2012, the Los Angeles County Superior Court
13  rejected Petitioner's claim for failing to state a prima facie case for relief, but did
14  not explain its reasoning.  Lodg. No. 18 at 170-94; Lodg. No. 19.  Accordingly, the
15  Court engages in an "independent review of the record" to determine "whether the
16  state court's decision was objectively unreasonable."  <u>Walker</u>, 709 F.3d at 939
17  (internal quotation marks and citations omitted); <u>see also</u> 28 U.S.C. § 2254(d).

18  **1.    Relevant Trial Court Proceedings**

19  On February 16, 2010, during trial, Petitioner filed a "Challenge for Cause to
20  Judge Daniel Feldstrom" under California Code of Civil Procedure section 170.1-
21  170.5, alleging judicial bias and requesting disqualification of the judge on the
22  ground that his wife was a practicing district attorney.  CT 203-06.  The trial judge
23  filed a verified answer denying the allegations.  <u>Id.</u> at 213-220.  The matter was
24  assigned to a judge in Orange County, who denied Petitioner's request for
25  disqualification.  RT 2708; CT 355.

26  Petitioner also subpoenaed the trial judge to testify "so the juror's could hear
27  that your spouse is a prosecutor and that [she is] working with the same agency as

28

66

1  this prosecutor . . ." RT 631.  The trial judge quashed the subpoena because
2  Petitioner had already filed a challenge for cause and "that would not normally be
3  an issue that would be presented to the jury and it won't be in this particular trial."
4  Id.

5       After trial, Petitioner raised additional grounds of judicial misconduct in
6  various motions.  CT 259, 282-91; 365-66; RT 2708.  The court denied the
7  motions.  CT 447; RT 2708-11.

8       **2.     Judicial Bias Claims on Federal Habeas Review**

9       On federal habeas review of a state trial judge's conduct, the issue is
10 whether, in the context of the trial as a whole, the judge's behavior rendered the
11 trial so fundamentally unfair as to violate due process.  Duckett v. Godinez, 67
12 F.3d 734, 740-41 (9th Cir. 1995).  The Court must otherwise presume the judge's
13 honesty and integrity.  Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L.
14 Ed. 2d 712 (1975).  Further, "judicial rulings alone almost never constitute a valid
15 basis for a bias or partiality motion."  Liteky v. United States, 510 U.S. 540, 555,
16 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).  Petitioner would be entitled to relief
17 only if the record disclosed actual bias on the part of the trial judge or leaves the
18 reviewing court with an abiding impression that the judge's conduct projected to
19 the jury an appearance of advocacy or partiality.  United States v. Mostella, 802
20 F.2d 358, 361 (9th Cir. 1986).

21      **3.     Analysis**

22            **a.     Alleged Biased Comments Subclaims**

23      In subclaim (a), Petitioner contends the trial judge was biased because he
24 said "I've had plenty of dealings with pro. per. inmates in the past.  I know how
25 you all are.  You're no good."  Pet. Mem. Part 3 at 11.  Although Petitioner alleges
26 this comment was made at the January 6, 2010 hearing, no such comment was
27 made.  The court's only reference to pro per defendants was to say that "[a] lot of
28

pro pers become dissatisfied with their investigators." RT A15. This aspect of Petitioner's subclaim is therefore denied because it is unsupported by the record and factually inaccurate. See Greenway, 653 F.3d at 804; Blackledge, 431 U.S. at 75 n.7.

Also in subclaim (a), Petitioner contends the trial court improperly referred to information from an extrajudicial source when he commented that "Russians" placed the alleged contraband in Petitioner's truck. Pet. Mem. Part 3 at 14; see also Pet. Mem. Part 4 at 6, 19. In denying Petitioner's post-trial motion for an evidentiary hearing on the issue of the alleged Asian detective, the court stated "[y]ou tried in your best way, I think, to explain how [the drugs] might have gotten there; and it wasn't through the hands of any police officer, but rather maybe some Russians or somebody, I believe, that happened to be staying somewhere who had access to your vehicle." RT 2417-18 (emphasis added). This aspect of Petitioner's subclaim lacks merit because it is evident the trial judge mistakenly referred to "Russians" instead of the purported Brazilians that Petitioner testified about during trial, and, in any event, the comment was part of a judicial ruling made outside the presence of the jury. See Liteky, 510 U.S. at 555; Williams, 441 F.3d at 1043 (finding no due process violation where the trial court's hostile remarks towards defendant occurred outside the presence of the jury); Anderson v. McEwen, No. EDCV 10-0782-CAS(JEM), 2013 WL 4517898, at *14 (C.D. Cal. Aug. 26, 2013) ("it is difficult to see how . . . comments [supporting judicial bias claim] could have influenced the jury and rendered the trial unfair" where they where made outside the presence of the jury).

In subclaim (b), Petitioner contends that in ruling on his discovery motion, the trial court said he did not think Petitioner was going to find the alleged Asian detective. Pet. Mem. Part 3 at 15-17. Petitioner alleges this evidences the judge had "foreknowledge" of the prosecutor's discovery and trial tactics, and the judge

1   colluded with the police to cover-up misconduct.  Id. at 15.  In denying Petitioner's

2   discovery motion related to the alleged Asian plain-clothes detective, the trial

3   judge noted that the issue "has been discussed at length . . . [b]ut the bottom line is

4   I don't know that there is such a person that will ever be available here to be

5   identified by you as the person you think was there.  They have provided you with

6   everything they know of."  RT A-8.  The trial judge's comment shows skepticism

7   of the merits of Petitioner's motion, not actual bias.  In any event, Petitioner is not

8   entitled to relief because the comment was part of a judicial ruling made outside

9   the presence of the jury.  See Liteky, 510 U.S. at 555; Williams, 441 F.3d at 1043;

10  Anderson, 2013 WL 4517898, at *14.

11              **b.    Recusal Subclaims**

12          To the extent Petitioner contends the denial of his application for recusal of

13  the trial judge under California Code of Civil Procedure section 170.1-170.5 was

14  improper, Petitioner fails to state a cognizable claim for relief.  See Freeman v.

15  Cate, No. 10-1987 DMS (MDD), 2012 WL 6162518, *9-10 (S.D. Cal. July 31,

16  2012) (claims that judge should have been disqualified under California Code of

17  Civil Procedure section 170 et seq. are not cognizable on federal habeas review).

18  Indeed, the Supreme Court has stated "most matters relating to judicial

19  disqualification [do] not rise to a constitutional level."  Aetna Life Ins. Co. v.

20  Lavoie, 475 U.S. 813, 820, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986).

21          Even assuming Petitioner's recusal subclaims are cognizable, they lack

22  merit.  In subclaim (c), Petitioner contends the trial judge was biased and should

23  have been recused because he failed to disclose that his wife was a practicing Los

24  Angeles County district attorney.  See Pet. Mem. Part 3 at 17-24.

25  Petitioner alleges he learned from another inmate that the trial judge's wife was a

26  district attorney "working for the same employer (Steve Cooley) that's currently

27

28

prosecuting defendant" and that the judge did not properly disclose this alleged bias. Id. at 17.

In his verified answer to Petitioner's motion for disqualification, the trial judge declared:

> To advise the parties that my spouse is a deputy
> district attorney, I have posted large signs in the
> courtroom that advise parties and their attorneys of that
> circumstance, and have caused forms to be located
> adjacent to the counsel table approximately 1-2 feet from
> their chairs for litigants and attorneys to acknowledge
> notice of the advisement that . . . my spouse is a deputy
> district attorney. One of the signs is located next to the
> forms and is affixed to the counsel table in plain view
> directly in front of each defendant and his or her attorney.
> The other sign is posted in an upright position across
> from defense counsel's table, directly in front of the
> defendant's seat and easily visible to defendants and their
> attorneys at eye level when seated at counsel table. I
> have modeled this procedure after the practices of other
> judges who have similar disclosure requirements. My
> courtroom is a busy, high volume courtroom, and I have
> found this disclosure procedure works well in that
> environment. The feed back I have received from
> attorneys who appear before me, confirm that these signs
> and forms are immediately noticeable and provide a clear
> advisement.

CT 220.

70

1        When Petitioner filed the motion for disqualification, he admitted the court

2   had orally disclosed to Petitioner that his wife was a prosecutor, but Petitioner

3   complained the disclosure came after the jury was picked but before opening

4   statements.  RT 628.  In response to Petitioner's statement that he was not aware

5   before that time, the trial court outlined all the disclosures in his courtroom,

6   including the disclosure "right in front of your eyes, at eye level, not 4 feet from

7   you, which you've acknowledged in your declaration."  Id. at 629.  Petitioner

8   simply responded "[w]ell it's not right here where I'm sitting.  It's on the upper

9   end of the table" and that he does not "try to read the fine print and memoranda

10  displayed."  Id. at 630.  The court explained that Petitioner could reach right out

11  and touch it, to which Petitioner replied "I'm not touching it now."  Id.  Thus, the

12  trial judge did disclose that his wife was a district attorney, and Petitioner's claim

13  is merely based on a frivolous quibble with the judge.  See id. at 630.  More

14  importantly, Petitioner has failed to show that, even if there was inadequate

15  disclosure, the relationship required recusal.  See Sensley v. Albritton, 385 F.3d

16  591, 599-600 (5th Cir. 2004) (judge not required to recuse when his wife was an

17  employee of the district attorney's office litigating matters in his court).

18      Relatedly, Petitioner also alleges in subclaim (d) that the trial judge

19  wrongfully stated in his declaration supporting his verified answer that Petitioner

20  appeared "a half dozen times" when in fact Petitioner appeared only four times

21  (Pet. Mem. Part 3 at 24-26); in (e) that the trial judge relied on hearsay in his

22  declaration (id. at 27-31); and in (f) that trial judge improperly quashed a subpoena

23  upon himself to testify as a witness in Petitioner's trial about his bias (id. at 32-33).

24  All of these claims are central to Petitioner's belief that the trial judge was

25  allegedly biased because of his wife's employment with the district attorney's

26  office.  But regardless of that relationship, Petitioner has not shown that any of

27  these allegations demonstrate the judge harbored any "deep-seated favoritism or

28

71

1    antagonism that would make fair judgment impossible." <u>Liteky</u>, 510 U.S. at 555.

2    Petitioner alleges no facts showing the judge's marriage to a district attorney

3    caused him to do anything that rendered Petitioners trial fundamentally unfair.  <u>See</u>

4    <u>id.</u> at 550-51 (even a judge who is "exceedingly ill disposed towards the

5    defendant" not subject to recusal on the ground of bias).  On reviewing the record,

6    this Court has discerned no judicial conduct rendering Petitioner's trial "so

7    fundamentally unfair as to violate federal due process . . . "  <u>See</u> <u>Duckett</u>, 67 F.3d

8    at 740.

9         Hence, reviewing the record independently, the Court concludes the Los

10   Angeles County Superior Court's denial of Petitioner's claim was not an

11   "objectively unreasonable" application of clearly established federal law.  <u>See</u>

12   <u>Walker</u>, 709 F.3d at 939 (internal quotation marks and citations omitted); <u>see also</u>

13   28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

14   Eleven.

15   **I.**    **<u>Claim Twelve Does not Warrant Habeas Relief</u>**

16        Petitioner argues in Claim Twelve that the trial court violated his right to a

17   fair trial and to confront witnesses by restricting and then admonishing the jury to

18   disregard Petitioner's cross examination of Deputy Craft.  Pet. Mem. Part 3 at 34-

19   37; Traverse at 22-23.  In its denial disposing of Petitioner's state habeas petition

20   on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's

21   claim for failing to state a prima facie case for relief, but did not explain its

22   reasoning.  Lodg. No. 18 at 195-97; Lodg. No. 19.  Accordingly, the Court engages

23   in an "independent review of the record" to determine "whether the state court's

24   decision was objectively unreasonable."  Walker, 709 F.3d at 939 (internal

25   quotation marks and citations omitted); <u>see also</u> 28 U.S.C. § 2254(d).

26        **1.**    **<u>Relevant Trial Court Proceedings</u>**

27

28

1         Just following the prosecutor's opening statement, the trial court noted "I

2   listened very carefully to [the prosecutor's] opening statement . . . [and] there was

3   no mention of consent," and the prosecutor confirmed that he was not going to

4   raise the issue at trial.  RT 310.

5         The court then admonished Petitioner "the issue of the legality of consent is

6   not an issue that is relevant in this trial.  What makes it even less relevant is the

7   People are not even mentioning it through their witnesses, that this search was

8   based on any form of consent."  Id.  The court explained to Petitioner that the issue

9   of whether there was a valid consent to search Petitioner's vehicle was irrelevant

10  and "collateral" to the elements of the crimes charged against him, and that the

11  probative value was outweighed by the potential for prejudice, undue consumption

12  of time, and juror confusion.  Id. at 310-11.  Petitioner responded "I know I'm not

13  trying the Fourth Amendment."  Id. at 314.

14        During Petitioner's cross-examination of Craft, Petitioner repeatedly asked

15  questions related to the stop of his vehicle and the search, and the court sustained

16  the prosecutor's objections.  See, e.g., id. at 360, 362-66, 370-72, 377-78.  At a

17  recess, the prosecutor requested the jury be admonished due to Petitioner's

18  repeated references to the legality of the search.  Id. at 399-400.  The court

19  reminded Petitioner that he was told that the legality of the search was an issue for

20  the court to decide at the suppression hearing, not by the jury.  Id. at 401-02.  The

21  court then informed the jury that it would be instructed to this effect, and the court

22  did so after trial.  Id. at 404; CT 230.

23  ///

24  ///

25       **2.**    **Confrontation Clause Claims on Federal Habeas Review**

26        The U.S. Supreme Court has recognized that the Confrontation Clause of the

27  Sixth Amendment protects a defendant's right to cross-examine witnesses.  See

28

1   <u>Olden v. Kentucky</u>, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988);

2   <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986);

3   <u>Davis v. Alaska</u>, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).  The right

4   to cross-examine a witness includes the opportunity to show not only that a witness

5   is biased, but also that the testimony is exaggerated or otherwise unbelievable.

6   <u>Fowler v. Sacramento County Sheriff's Dept.</u>, 421 F.3d 1027, 1035 (9th Cir. 2005)

7   (citing <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 51-52, 107 S. Ct. 989, 94 L. Ed. 2d 40

8   (1987) (plurality opinion)).  Hence, to show a restriction on cross-examination

9   violates the Confrontation Clause, a defendant must demonstrate "'[a] reasonable

10  jury might have received a significantly different impression of a [witness's]

11  credibility had counsel been permitted to pursue his proposed line of cross-

12  examination.'"  <u>Slovik v. Yates</u>, 556 F.3d 747, 753 (9th Cir. 2009) (quoting <u>Van

13  Arsdall</u>, 475 U.S. at 680).

14          At the same time, however, trial judges retain wide latitude to impose

15  reasonable limits on cross-examination based on concerns about, among other

16  things, harassment, prejudice, confusion of the issues, or interrogation that is

17  repetitive or only marginally relevant.  <u>See Van Arsdall</u>, 475 U.S. at 679; <u>see also</u>

18  <u>Wood v. Alaska</u>, 957 F.2d 1544, 1549 (9th Cir. 1992) (explaining even relevant

19  cross-examination may properly be excluded if its probative value is outweighed

20  by other legitimate interests).  Such restrictions are permissible, provided they are

21  "'not . . . arbitrary or disproportionate to the purposes they are designed to serve.'"

22  <u>Michigan v. Lucas</u>, 500 U.S. 145, 151, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991)

23  (quoting <u>Rock v. Arkansas</u>, 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37

24  (1987)).

25          Confrontation Clause claims are subject to harmless error analysis.  <u>Ocampo

26  v. Vail</u>, 649 F.3d 1098, 1114 (9th Cir. 2011).  On federal habeas review, the Court

27  measures the harmlessness of an error according to the standard established in

28

74

1   <u>Brecht</u>, 507 U.S. at 637-38.  <u>See</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 116, 127 S. Ct. 2321,

2   168 L. Ed. 2d 16 (2007); <u>see also</u> <u>Pulido v. Chrones</u>, 629 F.3d 1007, 1012 (9th Cir.

3   2010).  "Under this standard, habeas petitioners . . . are not entitled to habeas relief

4   based on trial error unless they can establish it resulted in 'actual prejudice.'"

5   <u>Brecht</u>, 507 U.S. at 637.  "'Actual prejudice' is demonstrated if the error in

6   question had a 'substantial and injurious effect or influence in determining the

7   jury's verdict.'"  <u>Winzer v. Hall</u>, 494 F.3d 1192, 1201 (9th Cir. 2007) (quoting

8   <u>Brecht</u>, 507 U.S. at 623).  In turn, when assessing whether an error had a

9   "substantial and injurious effect," this Court must consider five factors propagated

10  by the U.S. Supreme Court in <u>Van Arsdall</u>: (1) the importance of the witness'

11  testimony in the prosecution's case; (2) whether the testimony was cumulative;

12  (3) the presence or absence of evidence corroborating or contradicting the

13  testimony of the witness on material points; (4) the extent of cross-examination

14  otherwise permitted; and (5) the overall strength of the prosecution's case.

15  <u>Merolillo v. Yates</u>, 663 F.3d 444, 455 (9th Cir. 2011) (citing <u>Van Arsdall</u>, 475 U.S.

16  at 684).

17          **3.   <u>Analysis</u>**

18          Here, even assuming the trial court's refusal to allow further cross-

19  examination was error, the Court concludes the <u>Van Arsdall</u> factors dictate that the

20  error was not prejudicial under <u>Brecht</u>.  First, whether Petitioner consented to the

21  search of his truck was irrelevant to whether he transported or possessed for sale

22  the drugs in his truck.  Second, any testimony by the officers about consent would

23  have been cumulative to their testimony about their version of the traffic stop, and

24  Petitioner's testimony that he did not consent.  <u>See</u> RT 1256-62.  Further, the

25  prosecution presented other evidence at Petitioner's trial supporting the *charged*

26  act of transporting or possessing the drugs for sale, including the large quantity of

27  methamphetamine found in Petitioner's vehicle, the packaging, cash, and lack of

28

75

1   evidence that Petitioner was under the influence, personally used the drug, or

2   possessed it but did not intent to sell it.  Thus, weighing the <u>Van Arsdall</u> factors, it

3   is unlikely that the trial court's refusal to allow Petitioner to cross-examine Craft

4   further about whether he consented to the search had a "substantial and injurious

5   effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 623;

6   <u>Hara v. Santa Clara Superior Court</u>, No. C 04-04810 JSW, 2006 WL 889420, *6

7   (N.D. Cal. Apr. 6, 2006) (any error in restriction of cross-examination of officer

8   into the legality of a search was harmless, in part, because excluded testimony was

9   cumulative to testimony that someone else had driven defendant's vehicle, which

10   was the defendant's theory of defense).

11       Hence, reviewing the record independently, the Court concludes the Los

12   Angeles County Superior Court's denial of Petitioner's claim was not an

13   "objectively unreasonable" application of clearly established federal law.  <u>See</u>

14   <u>Walker</u>, 709 F.3d at 939 (internal quotation marks and citations omitted); <u>see also</u>

15   28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

16   Twelve.

17   **J.   <u>Claim Fifteen Does not Warrant Habeas Relief</u>**

18       Petitioner argues in Claim Fifteen that the trial court violated his rights to a

19   fair trial and to present a defense when it quashed Petitioner's subpoena of a

20   toxicologist who drafted a report indicating a hair follicle test showed Petitioner

21   tested negative for marijuana intoxication.  Pet. Mem. Part 3 at 47-49; Traverse at

22   25-26.  Petitioner contends testimony about the negative marijuana test would

23   impeach Deputy Craft's testimony that there was "a strong odor of burnt marijuana

24   emitting from the driver's side of the vehicle."  Pet. Mem. Part 3 at 47; RT 332.  In

25   its denial disposing of Petitioner's state habeas petition on October 3, 2012, the

26   Los Angeles County Superior Court rejected Petitioner's claim for failing to state a

27   prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 207-

28

76

208.1; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable." <u>Walker</u>, 709 F.3d at 939 (internal quotation marks and citations omitted); <u>see also</u> 28 U.S.C. § 2254(d).

### 1.    <u>Relevant Trial Court Proceedings</u>

Before the suppression motion hearing, Petitioner produced a hair follicle toxicology report showing negative results for the presence of marijuana.  RT B2-B4.  The hair samples were provided for testing months after Petitioner was arrested.  <u>Id.</u> at B4.  Nonetheless, the prosecutor stipulated Petitioner was not under the influence of marijuana at the time Petitioner was arrested.  <u>Id.</u>  In light of this stipulation, Petitioner indicated "it looks like I may not need to subpoena the toxicologist."  <u>Id.</u> at B5.

### 2.    <u>Exclusion of Evidence Claims</u>

See Section VI.G.2, for a summary of the legal standard for assessing exclusion of evidence claims on federal habeas review.

### 3.    <u>Analysis</u>

Here, although Petitioner contends the toxicologist who prepared the drug test report appeared in court and the trial judge "erroneously excused [him] from court without even having a [h]earing on the record" (<u>see</u> Pet. Mem. Part 3 at 48), there appears to be nothing in the record indicating the toxicologist in fact appeared.  <u>See</u> RT 946-75, 1341; CT 211-12 221-22.  In any event, Petitioner has failed to explain how his proposed testimony about a drug test taken <u>after</u> Petitioner was arrested was relevant to his trial.  Further, to the extent the test could show lack of marijuana use for a period prior to the test that could include the day he was arrested (<u>see</u> RT B3), Petitioner has also failed to show how it was not cumulative to the prosecutor's stipulation.  <u>See</u> <u>Crane</u>, 476 U.S. at 689-90.

1    Hence, reviewing the record independently, the Court concludes the Los

2    Angeles County Superior Court's denial of Petitioner's claim was not an

3    "objectively unreasonable" application of clearly established federal law.  See

4    Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

5    28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

6    Fifteen.

7    **K.    Claim Sixteen Does not Warrant Habeas Relief**

8         Petitioner argues in Claim Sixteen that the trial court violated his due

9    process rights by erroneously denying his foundational objection to the admission

10   of chain of custody evidence.  Pet. Mem. Part 3 at 50; Pet. Mem. Part 4 at 1-2;

11   Traverse at 26-27.  Specifically, Petitioner contends prosecution criminalist

12   Gregory Forte testified he received the contraband to test from someone else and

13   there is no evidence concerning where that person received the bag or envelope

14   containing the drugs.  Pet. Mem. Part 3 at 50.  In its denial disposing of Petitioner's

15   state habeas petition on October 3, 2012, the Los Angeles County Superior Court

16   rejected Petitioner's claim for failing to state a prima facie case for relief, but did

17   not explain its reasoning.  Lodg. No. 18 at 209-11; Lodg. No. 19.  Accordingly, the

18   Court engages in an "independent review of the record" to determine "whether the

19   state court's decision was objectively unreasonable."  Walker, 709 F.3d at 939

20   (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

21        **1.    Relevant Trial Court Proceedings**

22        Deputy Craft testified that the 23 plastic bindles found in Petitioner's truck

23   were logged into evidence, assigned a uniform report number ("URN"), placed into

24   a sealed envelope that contains a lab receipt number, and submitted to the

25   sheriff's department lab for testing.  RT at 338-39.  Deputy Craft was shown

26   three color-photographs of contraband, and he recognized the items depicted in the

27   photographs as the bindles recovered from Petitioner's vehicle.  Id. at 339-40.

28

78

1    Gregory Forte, the sheriff's department's senior criminologist, testified that he

2    received the bindles in a sealed envelope under the same URN.  Id. at 665-67, 678.

3    Forte personally broke the seals, removed the substance, weighed and tested it, and

4    determined it was methamphetamine.  Id. at 667-68, 670-71.  Forte was also shown

5    the photographs and testified that the items depicted were the bindles containing

6    the substance he subsequently determined was methamphetamine.  Id. at 667.

7         On cross-examination, Forte testified he was assigned to test the

8    contraband, and received the sealed envelope from his supervisor to do so.  Id. at

9    674.  He did not see where his supervisor retrieved the envelope, but said "it's

10   assumed that she received it from our evidence control system."  Id.  Petitioner

11   asked whether he had ever heard of any instances where people stole "from the

12   evidence locker or exchanged items from the evidence locker," and Forte replied

13   "not that I'm aware of," and followed by stating "I'm sure it's happened, but I've

14   never heard of any [instances]."  Id.

15        Petitioner later moved to exclude the methamphetamine on the basis that the

16   prosecution had failed to establish a chain of custody showing the drugs were the

17   same items that were recovered from his vehicle.  Id. at 939-41.  The trial court

18   denied the motion:

19              It appeared to the court from the testimony

20              provided in this trial that there was sufficient testimony

21              with regard to the chain of custody to support its

22              admissibility.

23                   Any absences or breaks in the -- untestified to

24              parts of the chain go to the weight of the evidence and

25              not its admissibility.  I heard no evidence that suggested

26              to me that there was a problem with the integrity of the

27              chain of custody.  Your motion is denied.

28

79

1   Id. at 941.

2        2.   **Analysis**

3        At the outset, the Court notes Petitioner presents his claim as a state-law

4   issue that is not cognizable on federal habeas corpus.  In the Petition

5   Memorandum, Petitioner almost exclusively relies on California case law and the

6   California Evidence Code.  See Pet. Mem. Part 3 at 50; Pet. Mem. Part 4 at 1-2;

7   Traverse at 26-27.  His only attempt to present a federal question is through

8   fleeting references to "due process" and "a fair trial." See Pet. Mem. Part 3 at 50,

9   Pet. Mem. Part 4 at 2.  Generally, this is not sufficient to covert a state law claim

10  into a federal issue.  See Johnson v. Rosemeyer, 117 F.3d 104, 110 (3rd Cir. 1997)

11  ("[E]rrors of state law cannot be repackaged as federal error simply by citing the

12  Due Process Clause."); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.

13  1997) (holding a petitioner may not "transform a state-law issue into a federal one

14  merely by asserting a violation of due process").

15       Furthermore, although the U.S. Supreme Court has been clear that a habeas

16  petition should be granted when constitutional errors have rendered the trial

17  fundamentally unfair, see Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct. 1495,

18  146 L. Ed. 2d 389 (2000), the Ninth Circuit has held the Court has not yet made a

19  clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes

20  a due process violation sufficient to warrant issuance of a writ of habeas corpus.

21  See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).   Accordingly,

22  because there is no clearly established federal law governing Petitioner's claim, the

23  Court has no authority to grant relief on Petitioner's claim.  See Musladin, 549

24  U.S. at 77; Hall v. Cate, No. CV 12-4770-JGB (SP), 2014 WL 3587509, at *8

25  (C.D. Cal. July 16, 2014) (claim that admission of criminalist's testimony violated

26  due process does not warrant federal habeas relief "because there are no controlling

27

28

1  Supreme Court decisions holding that the admission of evidence based on an
2  inadequate chain of custody violates due process").

3         Despite this Court's reluctance to view this claim as a cognizable federal
4  issue, even assuming the claim is reviewable, habeas relief is not warranted
5  because there were permissible inferences for the jury to draw from the evidence,
6  and the evidence did not render Petitioner's trial fundamentally unfair.  See
7  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) ("Only if there are no
8  permissible inferences the jury may draw from the evidence can its admission
9  violate due process.  Even then, the evidence must 'be of such quality as
10 necessarily prevents a fair trial.'").  Despite any possible glitch in the chain of
11 custody, the jury could permissibly infer from Forte's testimony that the substance
12 he was charged with transporting and possessing for sale was a controlled
13 substance.   See California Health and Safety Code §§ 11378, 11379(a); Jammal,
14 926 F.2d at 920.

15        Hence, reviewing the record independently, the Court concludes the Los
16 Angeles County Superior Court's denial of Petitioner's claim was not an
17 "objectively unreasonable" application of clearly established federal law.  See
18 Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also
19 28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim
20 Sixteen.

21 **L.     Claim Seventeen Does not Warrant Habeas Relief**

22        Petitioner argues in Claim Seventeen that the prosecutor committed
23 misconduct during closing argument by intentionally lying to the jury that
24 Petitioner had already been convicted of the exact same counts for which he was
25 on trial.  Pet. Mem. Part 4 at 3-8; Traverse at 27-29.  Petitioner contends he did not
26 have a prior conviction for transportation or possession for sale of
27 methamphetamine, but rather only offering to sell methamphetamine.  Pet. Mem.
28

Part 4 at 3-6.  Finally, Petitioner contends the prosecutor improperly "went by" an instruction given by the trial court that improperly detailed three of his convictions. Pet. Mem. Part 4 at 7.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 212-16.1; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable." Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

### 1.    **Relevant Trial Court Proceedings**

At trial, Petitioner admitted on cross-examination that he had been convicted of "offer[ing] to sell a controlled substance" that was "probably" under California Health and Safety Code section 11379, and that another conviction for possession for sale of marijuana had been dismissed on appeal.  RT at 1301-02. In closing argument, the prosecutor asked the jury to consider Petitioner's prior convictions while evaluating the credibility of his testimony.  RT 1564-65. The prosecutor stated as follows:

> And what you also know is that the defendant has admitted on the stand here that he has a previous conviction for various crimes.  I will just point these out and tell you why they're important.  He's got a previous conviction of [California] Health and Safety Code section 11379.  That's transportation of methamphetamine, okay?  He's also got a conviction for possession of narcotics for the purpose of sales.  And he's got a conviction for residential burglary, you've heard.  And

82

1    he's got a conviction for possession of marijuana for

2    purposes of sales.  Okay?

3         When you're evaluating the credibility of this

4    defendant, these convictions go towards his ability to tell

5    the truth.  His truth and veracity is in question just like

6    every witness.  Okay?  So this is something you need to

7    consider when deciding the believability of this

8    defendant.

9  Id. (emphasis added).

10      The prosecutor clarified in his rebuttal closing argument that Petitioner was

11 convicted of possession for sale, rather than transportation, and explained the

12 confusion by stating that both those crimes fall under the same code section,

13 California Health and Safety Code section 11379:

14         One thing, I did mis-speak in my first closing.  I

15    indicated that he had a prior [California Health & Safety

16    Code section] 11379 conviction, this defendant.  That is

17    true.  Okay?  But it was not for transportation.  11379.

18    And this particular case that we're in happens to be the

19    same charge, but on a theory of transportation.  Okay?

20    11379 has other theories as well that don't apply to this

21    case, namely sales of methamphetamine; and that was

22    brought up when he testified in trial.  Okay?  Sales of

23    methamphetamine.  This is a transportation of

24    methamphetamine case.  Looks like the same charge.

25 RT at 1592-93.

26      Following Petitioner's conviction, but before the trial on his prior

27

28

83

convictions, the trial court noted the People's exhibits consisted of an abstract of judgment in "[Los Angeles County Superior Court] case number PA027363, which includes convictions on three counts, one 11360(a) of the Health and Safety Code, count 1; count 2, 11359 of the Health and Safety Code; and count 3, 11379(a) of the Health and Safety Code, conviction date for all three May 28, 1998." Id. at 1624; CT 341. Petitioner advised the court he had originally received a life sentence in that case pursuant to the Three Strikes law but the convictions were reversed in 2004, and that on remand he had pled to only one of the three counts in exchange for a sentence of time served. RT at 1627. The court noted it would order the file for that prior conviction and consider the matter during sentencing. Id.

At a subsequent hearing, the trial court reviewed the court file for the prior conviction, and confirmed Petitioner was correct. Id. at 2404. The court explained Petitioner had initially been convicted of California Health and Safety Code sections 11360(a), 11359, and 11379(a). Id. The court further explained the Ninth Circuit reversed the case and Petitioner later entered into a plea agreement for offering to sell a controlled substance under California Health and Safety Code section 11379(a), and he was sentenced for that conviction only in 2005. Id. at 2405; see Gupta v. Runnels, 116 F. App'x 816 (9th Cir. 2004). The court then reiterated its agreement with Petitioner that, as to the violations of California Health and Safety Code sections 11360 and 11359, "those two allegations were stricken, based upon the revised plea and conviction in the case in 2005." RT at 2405.

///

### 2. Prosecutorial Misconduct Claims on Federal Habeas Review

84

To obtain federal habeas relief for prosecutorial misconduct on due process grounds, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted).  Prosecutorial misconduct merits habeas relief only where the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Id.</u> (internal citation omitted); <u>Bonin v. Calderon</u>, 59 F.3d 815, 843 (9th Cir. 1995) ("To constitute a due process violation, the prosecutorial misconduct must be so severe as to result in the denial of [the petitioner's] right to a fair trial.").  "In fashioning closing arguments, prosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences from the evidence." <u>United States v. McChristian</u>, 47 F.3d 1499, 1507 (9th Cir. 1995) (internal citation omitted).  "The arguments of counsel are generally accorded less weight by the jury than the court's instructions and must be judged in the context of the entire argument and the instructions." <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 898 (9th Cir. 1996) (citing <u>Boyde v. California</u>, 494 U.S. 370, 384-85, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)); <u>see also</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 195, 129 S. Ct. 823, 172 L. Ed. 2d 532 (2009).

To grant habeas relief on the basis of prosecutorial misconduct, the misconduct must have been prejudicial, that is, it must have "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 623.  <u>See</u> <u>Karis v. Calderon</u>, 283 F.3d 1117, 1128 (9th Cir. 2002) (stating that a claim of prosecutorial misconduct is analyzed under the prejudice standard set forth in <u>Brecht</u>).  Under <u>Brecht</u>, a reviewing court must grant relief if "in grave doubt as to the harmlessness of the error." <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).  In assessing prejudice arising from prosecutorial misconduct, the Court must consider a number of factors:

(1) whether a curative jury instruction was given, see Greer v. Miller, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987); (2) the weight of evidence of guilt, see United States v. Young, 470 U.S. 1, 19, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (finding "overwhelming evidence" of guilt); (3) whether the misconduct was isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (4) whether the prosecutorial misconduct related to a critical aspect of the case, see Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); and (5) whether the challenged comment of the prosecutor misstated or manipulated the evidence.  Darden, 477 U.S. at 181-82.

### 3.  **Analysis**

Looking to the factors for assessing prejudice in prosecutorial misconduct cases, the Court finds the prosecutor's remarks were not prejudicial.  Brecht, 507 U.S. at 637-38.  First, the jury was instructed that they "alone must judge the credibility of the witnesses," and that a prior felony conviction could be used to evaluate *only* the credibility of a witness' testimony.  CT 227, 229; RT 1533, 1538. The jury was further instructed that "[n]othing that the attorneys say is evidence" and specifically that their remarks in closing arguments "are not evidence."  CT 226; RT 1530.  Further, the prosecutor admitted his mistake and corrected himself. RT at 1592-93; see Rhoades v. Henry, 598 F.3d 495, 510 (9th Cir. 2010) (petitioner not entitled to relief on claim that prosecutor improperly commented on his decision not to testify because prosecutor corrected himself and jury was instructed not to infer anything from the defendant's failure to testify).  Second, the case against Petitioner was strong:  Petitioner was found with over $25,000 in methamphetamine packaged for sale in 23 individually-wrapped small bags, additional packaging materials, and cash bindles in amounts consistent with the street value of one ounce of methamphetamine.  RT 336-39, 324-43, 345, 426-32, 910, 917-20.  Third, the prosecutor's remarks were isolated and not part of a larger

86

1   pattern of misconduct by the prosecutor.  See Hall v. Whitley, 935 F.2d 164, 165-
2   66 (9th Cir. 1991) ("Put in proper context, the comments were isolated moments in
3   a three day trial.").  Fourth, the prosecutor's misstatement about Petitioner's prior
4   convictions did not relate to a critical aspect of the case, only to one of a multitude
5   of other factors the jury could consider in assessing Petitioner's credibility.  See
6   CT 227-28; RT 1534-35.  Moreover, it related to only one of four prior convictions
7   Petitioner admitted on cross-examination, which included the far more serious
8   prior convictions of manslaughter and first degree residential burglary.  See RT
9   1299-1302.  Finally, the prosecutor's remarks did not actually misstate or
10  manipulate any of the evidence presented at trial.  Thus, the Court finds the factors
11  weigh against a finding of prejudice.

12          Finally, in a single sentence, Petitioner contends the prosecutor also
13  committed misconduct because "he went by CALCRIM 3101 that was submitted
14  by the trial court, but CALCRIM 3101 incorrectly showed three (3) erroneous
15  convictions that defendant is not convicted of."  Pet. Mem. Part 4 at 7.  This aspect
16  of the claim lacks merit because the trial court gave no such instruction, and the
17  prosecutor never argued under the purported instruction.  CT 224-233; RT 1525-
18  66, 1588-96.  Moreover, as Petitioner admitted after trial, no other evidence of
19  Petitioner's priors was before the jury besides his admissions during cross-
20  examination.  See RT 2405 ("My priors never even went in front of the jury.  I had
21  admitted them in court.").

22          Hence, reviewing the record independently, the Court concludes the Los
23  Angeles County Superior Court's denial of Petitioner's claim was not an
24  "objectively unreasonable" application of clearly established federal law.  See
25  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also
26  28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim
27  Seventeen.

28

87

**M.     Claim Eighteen Does not Warrant Habeas Relief**

Petitioner argues in Claim Eighteen that there was insufficient evidence to support a finding that he "had knowledge of the presence" of the methamphetamine found in his truck. Pet. Mem. Part 4 at 9-15; Traverse at 29-33. In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning. Lodg. No. 18 at 217-22.1; Lodg. No. 19. Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable." Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

**1.     Sufficiency of the Evidence Challenges**

On federal habeas review, a petitioner may challenge the sufficiency of the evidence underlying a conviction in state court, on the grounds that the conviction violates his rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Jackson v. Virginia, 443 U.S. 307, 321, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). However, this Court's inquiry into the sufficiency of evidence supporting a conviction is limited. Evidence is sufficient unless the charge was "so totally devoid of evidentiary support as to render [petitioner's] conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment." Fish v. Cardwell, 523 F.2d 976, 978 (9th Cir. 1975) (internal quotation marks and citations omitted). The standard of review on a sufficiency of the evidence claim has long been whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (1979); see Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008). This Court will not re-weigh the evidence to reach a result different from that of the

jury.  See Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) ("The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict.").  Circumstantial evidence alone is sufficient to support a conviction.  See Jackson, 443 U.S. at 324-25 ("From the circumstantial evidence in the record, it is clear that the trial judge could reasonably have found beyond a reasonable doubt that the petitioner did possess the necessary intent at or before the time of the killing."); Schad v. Ryan, 671 F.3d 708, 717 (9th Cir. 2011) (per curiam) ("Circumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction."), cert. denied, 133 S. Ct. 432 (2012).

On federal habeas review under AEDPA, the Court must apply the standards of Jackson with an "additional layer of deference" to the state court's decision and may only overturn the decision if it constituted an "objectively unreasonable application" of Jackson.  See Juan H. v. Allen, 408 F.3d 1262, 1274 & n.12 (9th Cir. 2005).  In short, for a federal habeas court, "the only question under *Jackson* is whether th[e] [jury] finding was so insupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, ___ U.S. ___, 132 S. Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

The Jackson standard is "applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16.  The Court, therefore, first looks to California law when assessing whether the Court of Appeal unreasonably applied Jackson in deciding that there was sufficient evidence supporting Petitioner's convictions.

///

## 2.    Applicable California Law

1     Under California law, both transportation of a controlled substance and

2  possession of a controlled substance for sale require as an element that the accused

3  knew the substance was present.  See People v. Meza, 38 Cal. App. 4th 1741, 1746

4  (Cal. Ct. App. 1995) ("Transportation of a controlled substance is established by

5  carrying or conveying a usable quantity of a controlled substance with knowledge

6  of its presence and illegal character."); People v. Harris, 83 Cal. App. 4th 371, 374

7  (Cal. Ct. App. 2000) ("Unlawful possession of a controlled substance for sale

8  requires proof the defendant possessed the contraband with the intent of selling it

9  and with knowledge of both its presence and illegal character.").  That knowledge

10  may be established by circumstantial evidence.  See People v. Palaschak, 9 Cal. 4th

11  1236, 1242 (1995); see also People v. Williams, 5 Cal. 3d 211, 215 (1971).

12     "Possession may be actual or constructive.  Actual possession means the

13  object is in the defendant's immediate possession or control.  A defendant has

14  actual possession when he himself has the [object].  Constructive possession means

15  the object is not in the defendant's physical possession, but the defendant

16  knowingly exercises control or the right to control the object."  In re Daniel G., 120

17  Cal. App. 4th 824, 831 (Cal. Ct. App. 2004).  Dominion and control over a vehicle

18  in which the narcotics are found supports an inference of dominion and control

19  over the narcotics found in the vehicle.  See Williams, 5 Cal. 3d at 215.

20      "[T]he mere possession of narcotics constitutes substantial evidence that the

21  possessor of the narcotic knew of its nature."  See People v. Eckstrom, 187 Cal.

22  App. 3d 323, 331 (Cal. Ct. App. 1986).  Further, "[k]nowledge of the presence of

23  contraband and of its narcotic content may be inferred from the accused's conduct

24  or statements at or near the time of his arrest."  People v. Solo, 8 Cal. App. 3d 201,

25  206 (Cal. Ct. App. 1970), disapproved on other grounds by People v. Rogers, 5

26  Cal.3d 129, 134, n.4 (1971).

27     **3.**     **Analysis**

28

90

1    Here, as mentioned, Petitioner was found with over $25,000 in

2    methamphetamine packaged for sale in 23 individually-wrapped small bags,

3    additional packaging materials, and cash bindles in amounts consistent with the

4    street value of one ounce of methamphetamine. RT 336-39, 324-43, 345, 426-32,

5    910, 917-20.  The drugs, and one of the cash bindles were within Petitioner's reach

6    inside the truck, and two cash bindles were found on his person.  Id. at 334-35,

7    426-32.  Petitioner makes no challenge to the possession element of his convictions

8    (see, e.g., Pet. Mem. Part 4 at 9; Traverse at 29, 32), and the jury could reasonably

9    infer he had knowledge of the presence of the drugs due to his constructive

10   possession of such a large amount of drugs.  See United States v. Kearney, 560

11   F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to defendant's

12   knowledge of the presence of the drugs), cert. denied, 434 U.S. 971 (1977); Thanh

13   v. Evans, No. SA CV 08-127-CAS (PJW), 2009 WL 303150, *3 (C.D. Cal. Feb. 6,

14   2009) (jury could have reasonably inferred petitioner had knowledge of presence

15   of methamphetamine in his car because a large quantity was found in an open

16   console beside petitioner's seat); Eckstrom, 187 Cal. App. 3d at 331.

17   Further, Petitioner exhibited an awareness of its presence by acting

18   "extremely nervously" during his interaction with the officers.  RT 333.  Deputy

19   Craft testified Petitioner was shaking, stuttering, and his hands were trembling.  Id.

20   at 333-34, 397-98.  He was acting "more nervous than usual for a person on a basic

21   traffic stop for a Vehicle Code violation."  Id. at 333-34.  The jury could

22   reasonably infer from this that Petitioner had knowledge of the presence of the

23   drugs.  See United States v. Campbell, 507 F.2d 955, 958 (9th Cir. 1974) (jury

24   could infer defendant's knowledge of contraband found in car based on his

25   proximity to drugs, complete control of the car, and because he appeared to be

26   nervous); Thanh, 2009 WL 303150, at *3 (jury could have reasonably inferred

27

28

91

1  petitioner had knowledge of presence of methamphetamine in his car based on his
2  conduct after officer's stopped him); <u>Solo</u>, 8 Cal. App. 3d at 206.

3      While Petitioner points to his own testimony that he did not know of the
4  drug's presence and reiterates his defense that it could have been the Brazilians
5  who placed the drugs in his truck (<u>see</u> Pet. Mem. Part 4 at 220-21; Traverse at 30),
6  on federal habeas review of a claim under <u>Jackson</u>, this Court must not re-weigh
7  the evidence or inferences therefrom to reach a result different from that of the
8  jury.  <u>See</u> <u>Walters</u>, 45 F.3d at 1358; <u>see</u> <u>also</u> <u>Jackson</u>, 443 U.S. at 326 ("[A] federal
9  habeas corpus court faced with a record of historical facts that supports conflicting
10 inferences must presume–even if it does not affirmatively appear in the record–that
11 the trier of fact resolved any such conflicts in favor of the prosecution, and must
12 defer to that resolution.").  In any event, even if the drugs belonged to someone
13 else, the jury could reasonably infer Petitioner had knowledge of their presence
14 based on the factors above.  <u>See</u> <u>McNutt v. Gonzalez</u>, No. CV 10-122 JFW (SS),
15 2011 WL 662343, at *8 (C.D. Cal. Jan. 18, 2011) (although jury heard testimony
16 from a passenger admitting the drugs were hers, "the jury could nevertheless
17 reasonably conclude from the totality of the circumstances that Petitioner had
18 dominion, control and knowledge of the drugs"), <u>accepted by</u> 2011 WL 662976
19 (C.D. Cal. Feb. 17, 2011).

20     Hence, reviewing the record independently, the Court concludes the Los
21 Angeles County Superior Court's denial of Petitioner's claim was not an
22 "objectively unreasonable" application of clearly established federal law.  <u>See</u>
23 <u>Walker</u>, 709 F.3d at 939 (internal quotation marks and citations omitted); <u>see also</u>
24 28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim
25 Eighteen.

26 **N.   <u>Claim Twenty Does not Warrant Habeas Relief</u>**

27
28
                                       92

Petitioner argues in Claim Twenty that the trial court erroneously denied his motion for production of trial transcripts for the purpose of preparing a motion for new trial, thereby making Petitioner "ineffective as pro. per. counsel."  Pet. Mem. Part 4 at 18-23.  In its denial disposing of Petitioner's state habeas petition on October 3, 2012, the Los Angeles County Superior Court rejected Petitioner's claim for failing to state a prima facie case for relief, but did not explain its reasoning.  Lodg. No. 18 at 225-230; Lodg. No. 19.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also 28 U.S.C. § 2254(d).

### 1.   **Relevant Trial Court Proceedings**

Petitioner filed a "motion for production of trial transcripts for his motion for new trial," along with other similar requests.  CT 347-54; RT at 2402-03 (trial court's summary of various requests for transcripts for new trial motion).

The trial court found Petitioner had failed to show good cause for the transcripts, explaining "[i]f and when you're sentenced in this case, you're entitled to appeal your sentence, which includes the right to have an attorney represent you for appeal and to a transcript of all of the proceedings."  RT 2406.  The court further explained that ordering transcripts at that juncture in the proceedings would not assist the court in ruling on his motion for new trial and other various motions, and denied Petitioner's request.  RT 2406-07.

### 2.   **Analysis**

Petitioner's claim is premised on his belief that, with transcripts, he would have been able to present a better motion for a new trial.  However, Petitioner has failed to show that the trial court was unable to rule on his motion for a new trial without the transcripts.  Furthermore, even assuming he was able to obtain such transcripts, as mentioned in the Court's analysis of Claim Six, a challenge to the

1    ultimate ruling on the motion for a new trial is not cognizable in this proceeding.

2    See McGuire, 502 U.S. at 67-68; Herrera, 506 U.S. at 408; Gilliam, 2014 WL

3    6750223 at *23.  Accordingly, Petitioner fails to present a cognizable claim.

4          Hence, reviewing the record independently, the Court concludes the Los

5    Angeles County Superior Court's denial of Petitioner's claim was not an

6    "objectively unreasonable" application of clearly established federal law.  See

7    Walker, 709 F.3d at 939 (internal quotation marks and citations omitted); see also

8    28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Claim

9    Twenty.

10   **O.    Claims Two, Three, and Four Do not Warrant Habeas Relief**

11         Petitioner argues in Claim Two that his appellate counsel was ineffective by

12   failing to raise the issues Petitioner raised on state habeas corpus and because

13   counsel "intentionally, deliberately & recklessly, frustrated and sabotaged

14   [P]etititoner's attempt to comply with the Court of Appeals' November 28, 2012

15   Order."  See Pet. at 7; Pet. Part 1 at 15-30; Pet. Part 9 at 7-13; Traverse at 5-6.

16   Petitioner argues in Claim Three that appellate counsel was ineffective by failing to

17   challenge the denial of Petitioner's search and seizure motion.  See Pet. at 7; Pet.

18   Part 9 at 15; Pet. Part 10 at 1-2; Traverse at 5-6.  Finally, Petitioner argues in Claim

19   Four that appellate counsel was ineffective by failing to obtain a complete and

20   adequate appellate record.  See Pet. at 8; Pet. Part 10 at 3-14; Traverse at 5-6.  In

21   its reasoned order disposing of Petitioner's habeas petition on October 3, 2012, the

22   Los Angeles County Superior Court rejected Petitioner's claims.  See Lodg. No. 6.

23   Accordingly, the Court reviews the Superior Court's reasoned disposition of

24   Petitioner's claims as an "adjudication on the merits" subject to deference under

25   AEDPA.  See 28 U.S.C. § 2254(d).

26         **1.    Ineffective Assistance of Appellate Counsel Claims**

27

28

1    The Due Process Clause of the Fourteenth Amendment guarantees a

2  criminal defendant the effective assistance of counsel on his first appeal as of right.

3  Evitts v. Lucey, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

4  For a petitioner to prevail on his ineffective assistance of appellate counsel claims,

5  he must satisfy a two-prong test established in Strickland v. Washington, 466 U.S.

6  668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):  (1) he must show counsel's

7  performance was deficient; and (2) he must show he was prejudiced by the

8  deficient performance.  Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145

9  L. Ed. 2d 756 (2000) (adopting Strickland standard for assessing claims of

10  ineffective assistance of *appellate* counsel).  A court evaluating an ineffective

11  assistance of counsel claim does not need to address both components of the test if

12  a petitioner cannot sufficiently prove one of them.  Strickland, 466 U.S. at 697; see

13  also Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

14    First, to prove deficient performance, a petitioner must show counsel's

15  representation fell below an objective standard of reasonableness.  Strickland. 466

16  U.S. at 687-88.  Because of the difficulty in evaluating counsel's performance,

17  there is a "strong presumption that counsel's conduct falls within the wide range of

18  reasonable professional assistance."  Id. at 689.  Only if counsel's acts or

19  omissions, examined in light of all the surrounding circumstances, fell outside this

20  "wide range" of professionally competent assistance will the petitioner prove

21  deficient performance.  Id. at 690; United States v. Quintero-Barraza, 78 F.3d

22  1344, 1348 (9th Cir. 1995).

23    Second, to demonstrate prejudice as a result of appellate counsel's deficient

24  performance, a petitioner must demonstrate a "reasonable probability" he  would

25  have prevailed on appeal, but for appellate counsel's errors.  Miller v. Keeney, 882

26  F.2d 1428, 1434 & n.9 (9th Cir. 1989).

27

28

95

1    A federal habeas court's review of a claim under the <u>Strickland</u> standard is

2    "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411,

3    173 L. Ed. 2d 251 (2009). The relevant question "is not whether a federal court

4    believes the state court's determination under the <u>Strickland</u> standard was incorrect

5    but whether that determination was unreasonable – a substantially higher

6    threshold." <u>Id.</u> (citations omitted). "[B]ecause the <u>Strickland</u> standard is a general

7    standard, a state court has even more latitude to reasonably determine that a

8    defendant has not satisfied that standard." <u>Id.</u> (citation omitted).

9        **2.    The State Court Decision**

10    The Superior Court rejected Petitioner's claims for "fail[ing] to meet the[]

11    threshold burdens" of either of the <u>Strickland</u> requirements, and because "the

12    record is devoid of any evidence that any of the tactical or strategic decisions made

13    by counsel resulted from anything other than informed tactical choices within the

14    range of reasonable competence." <u>See</u> Lodg. No. 19 (citing <u>Strickland</u>, 466 U.S.

15    699; <u>People v. Ledesma</u>, 43 Cal. 3d 171 (1987); and <u>People v. Bunyard</u>, 45 Cal. 3d

16    1189 (1988)).

17        **3.    Analysis**

18    Petitioner's argument in Claim Two that appellate counsel was ineffective

19    by failing to raise the claims he pursued on state habeas corpus fails because he

20    cannot adequately demonstrate prejudice. <u>See Strickland</u>, 466 U.S. at 697.

21    Specifically, because the Court concludes in the previous sections that these claims

22    are themselves meritless, the Court finds appellate counsel's failure to raise the

23    claims was not prejudicial. That is, given the claims are meritless, it is not

24    "reasonably probable" Petitioner would have prevailed on direct appeal even if

25    appellate counsel had raised them. <u>Miller</u>, 882 F.2d at 1434. Moreover, regarding

26    claims that the Court did not address on the merits solely because there is no

27    clearly established federal law governing the claims for the purposes of federal

28

96

1   review, the Court finds Petitioner nevertheless would not have succeeded on direct

2   appeal on those claims because he cannot show any of the alleged errors were

3   prejudicial in light of the evidence against him, as explained in previous sections.

4   Id.

5       Petitioner's argument, also in Claim Two, that appellate counsel

6   "intentionally, deliberately & recklessly, frustrated and sabotaged [P]etitioner's

7   attempt to comply with the Court of Appeals' November 28, 2012 Order" lacks

8   merit.  See Pet. Part 9 at 13.  Appellate counsel's representation of Petitioner on

9   direct appeal had concluded and Petitioner was proceeding pro se on state habeas

10  corpus at that time (see Lodg. Nos. 21-22), and Petitioner did not have the right to

11  effective assistance of counsel in those proceedings.  See Pennsylvania v. Finley,

12  481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (holding that the right

13  to counsel extends only "to the first appeal of right, and no further"); Wainwright

14  v. Torna, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 71 L. Ed. 2d 475 (1982).

15      Regarding Petitioner's argument in Claim Three that appellate counsel was

16  ineffective by failing to challenge the denial of Petitioner's search and seizure

17  motion (see Pet. at 7; Pet. Part 9 at 15; Pet. Part 10 at 1-2; Traverse at 5-6), this

18  Court did not address the merits of that claim because it found the claim was barred

19  by Stone, 428 U.S. a 481-82.  However, the Court finds it is not "reasonably

20  probable" Petitioner would have prevailed on direct appeal had counsel raised the

21  issue for the reasons stated in Claim Six and elsewhere in the Petition.  Miller, 882

22  F.2d at 1434.  Petitioner's claim is based on his allegations that he declined consent

23  to the search to the alleged Asian plain-clothes officer that he was never able to

24  show existed.  The trial court could properly rely on the testimony of the two

25  officers who were actually at the scene that Petitioner consented to the search, and

26  deny the motion to suppress based on their testimony.  Accordingly, any challenge

27

28

97

on appeal to the search would have been unsuccessful, and Petitioner thus cannot show he was prejudiced.  Id.

Finally, Petitioner's argument in Claim Four that appellate counsel was ineffective by failing to obtain a complete and adequate appellate record (Pet. at 8; Pet. Part 10 at 3-14; Traverse at 5-6) is also meritless.  Appellate counsel was able to substantially augment the record with two Augmented Reporter's Transcripts (see Lodg. Nos. 3, 5), and three Augmented Clerk's Transcripts, which included a multitude of Petitioner's numerous and repetitive filings in the trial court (see Lodg. No. 4 at 14-15; Lodg. No. 6 at ACT 456-58; Lodg. No. 7 at ACT 66-67). Petitioner has failed to show that these were insufficient to obtain review of his underlying claims in state court or here.  Thus, counsel's performance was not deficient on appeal, and Petitioner was not prejudiced.  See Robbins, 528 U.S. at 285.

Hence, the Court holds the Superior Court's decision was not "contrary to" or an "unreasonable application" of "clearly established federal law."  28 U.S.C. § 2254(d)(1).  Accordingly, habeas relief is not warranted on Petitioner's ineffective assistance of appellate counsel claims.

**P.   Claim Twenty-One Does not Warrant Habeas Relief**

Petitioner argues in Claim Twenty-One that the cumulative effect of the errors alleged in the previous twenty grounds for relief resulted in a denial of due process.  Pet. Mem. Part 4 at 23-24; Traverse at 33.

"Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."  Mancuso v. Olivarez, 292 F.3d 939,957 (9th Cir. 2002) (citing United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996)); see also Parle v. Runnels, 505 F.3d 922, 928 (9th Cir. 2007) ("[T]he Supreme Court has clearly established that the combined effect of multiple trial

98

1   errors may give rise to a due process violation if it renders a trial fundamentally

2   unfair, even where each error considered individually would not require

3   reversal.").

4       Here, this Court finds none of the alleged errors individually constituted

5   error or prejudiced Petitioner.  See Mancuso, 292 F.3d at 957; Detrich v. Ryan,

6   740 F.3d 1237, 1273 (9th Cir. 2013) (cumulative effect of counsel's alleged errors

7   did not amount to ineffectiveness because most of petitioner's claims relied on

8   misleading characterizations of the factual record that, even if true, would not

9   establish significant prejudice, and even "[t]aken cumulatively, they still are not

10  substantial"), cert. denied, 134 S. Ct. 2662 (2014).  Accordingly, the Court finds

11  Petitioner did not suffer any cumulative error that deprived him of due process.

12  **Q.    Claim Twenty-Two Does not Warrant Habeas Relief**

13      Petitioner argues in Claim Twenty-Two that there was insufficient evidence

14  to support the civil forfeiture of $4,010 because there was no nexus between the

15  seized funds and some illegal transaction.  Pet. Mem. Part 4 at 25-28; Traverse at

16  34-37.

17      Petitioner's challenge to the civil forfeiture is not cognizable on federal

18  habeas review because 28 U.S.C. § 2254 provides relief based on a showing that

19  an individual "is in custody in violation of the Constitution or laws or treaties of

20  the United States."  Section 2254 "explicitly requires a nexus between the

21  petitioner's claim and the unlawful nature of the custody."  Bailey v. Hill, 599

22  F.3d 976, 980 (9th Cir. 2010) (citing Dickerson v. United States, 530 U.S. 428,

23  439 n.3, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000)).  A challenge to civil

24  forfeiture order does not provide such a nexus.  Bailey, 599 F.3d at 980-81.  This

25  is demonstrated by the fact that, even if petitioner were to successfully establish

26  that forfeiture was improper he would still have to serve the rest of his custodial

27  sentence in the same manner.  Id. at 981; United States v. Finze, 428 F. App'x

28

99

672, 677 (9th Cir. 2011) (claim challenging forfeiture order is not a cognizable § 2255 claim because it does not seek release from custody); <u>Tharpe v. Quarterman</u>, No. 4:07-CV-494-Y, 2007 WL 2491855, at *1 (N.D. Tex. Sept. 5, 2007) ("A § 2254 petition may not be used as a vehicle for challenging a civil forfeiture judgment or decree entered by a state court."). Accordingly, the claim is not cognizable on federal habeas review.

## VII.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an order: (1) accepting the findings and recommendations in this Final Report; (2) directing that judgment be entered denying the Petition; and (3) dismissing the action with prejudice.

DATED: March 27, 2015

_____
HON. KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

100